**READE MANUFACTURING COMPANY, Inc., a Corporation of the State of New Jersey, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 13733.

United States Court of Appeals Third Circuit.

Argued Feb. 8, 1962.

Decided March 6, 1962.

804

Laurence Reich, Newark, N. J. (Carpenter, Bennett & Morrissey, Newark, N. J., Samuel M. Coombs, Jr., Newark, N. J., on the brief), for appellant.

William A. Friedlander, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attorneys, Department of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., Vincent J. Commisa, Asst. U. S. Atty., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was denied the right to deduct certain payments as necessary and ordinary business expenses.

Originally taxpayer, under the same name, was a partnership composed of Charles H. and Leonard J. Reade. As such in 1947 it sold two tanks of caustic soda to A. E. Staley Mfg. Co. for use in the manufacture of soy sauces. Users of that sauce became ill, and made claim against the Staley Co. by reason thereof. Staley Co. disposed of the claims for some $800,000. Thereafter in the same year Staley Co. notified the Reade partnership of its intention to hold the latter responsible for its damages arising out of the sale to it of the mentioned caustic soda. On or about May 1, 1948 the taxpayer corporation was organized to acquire the partnership business subject to its liabilities. In the statement of assets and liabilities forming part of the acquisition, as the Stipulation of Facts notes "there is not included under any of the items listed under 'Liabilities' the said claim made by Staley against the partnership." The Stipulation also shows that the proposal to sell (which included the above statement) with the proposal's acceptance by the corporation constituted the purchase agreement between the partnership and the corporation. Of the 300 shares of no par value paid stock issued, Leonard J. Reade received 150, Charles H. Reade 149 and Charles F. Reade 1. Those three persons became the corporation's sole officers, stockholders and directors. The assets and liabilities appearing on the statement were transferred to the books of the corporation. The Stipulation states "The Staley claim never appeared on the books of the corporation."

On November 19, 1948 Staley sued the partnership on its claim for damages, alleged to total $1,050,000. The Reades after consultation with their attorney "felt that they could successfully defend the suit and they therefore decided to fight the case." A year later Staley filed an amended complaint restating its cause of action against the partnership and joining the taxpayer as a defendant on the theory it had assumed the partnership's liability for payment of the Staley claim. The taxpayer filed an answer denying that allegation.

It is stipulated that the directors of the taxpayer determined that the suit with its consequent publicity posed a serious threat to the continued existence of the corporation; they felt the banks would not allow further credit or loan; that the corporation's credit with its raw material supplies would be affected; that its ability to perform its contracts would be doubted by the railroads. The Stipulation reads: "The directors further felt that the obtaining of the loans and credit was vital to the continued existence of the corporation, and it was therefore determined that steps must be taken immediately to settle the Staley litigation. The corporation had been advised by the banks from which it had been accustomed to borrow, that unless the Staley case were settled at once, no further loans or credit would be extended to the corporation."

It appears from the Stipulation that around that time the Staley claim against both the partnership and the corporation

could be settled for $50,000. The corporation did not possess this sum and for business credit reasons was unable to finance it. The Stipulation language then reads:

"17. The Staley suit against the partnership and the taxpayer was compromised under an agreement whereby the taxpayer's two chief stockholders, Leonard J. Reade and Charles H. Reade, gave their personal promissory note in the amount of $50,000, payable to Staley at the rate of $5,000 per year beginning on September 1, 1950."

Thereafter on September 1 of each of the years 1950, 1951, 1952 and 1953, the taxpayer paid the installments on the note to Staley. It deducted each such payment as an ordinary and necessary business expense for the particular year. After that the two Reades agreed with Staley to settle the $30,000 balance of their note to Staley for $22,000. Taxpayer paid that amount and deducted it as ordinary and necessary business expense for its fiscal year ending April 30, 1955.

The Commissioner disallowed the 1953 $5,000 payment and the 1954 $22,000 payment. The taxpayer paid the amounts assessed, filed its claim for refund which was refused and started its present action. The case was tried to the court on the referred to Stipulation of Facts and as stated resulted in a judgment in favor of the defendant.

Taxpayer argues earnestly that "The Corporation's payments to Staley under the settlement which the Corporation was required to effect in order to preserve its business from destruction were deductible as ordinary and necessary business expenses."[1] This case was tried on a formal written Stipulation of Facts. The latter bluntly sets out serious and reasonable fear of business disaster if the Staley litigation was not closed out. It also unmistakably reveals that the settlement with Staley was made by the individuals Leonard J. Reade and Charles H. Reade who comprised the Reade partnership and who were also, as the Stipulation points out, "The taxpayer's two chief stockholders." Staley's grievance was against the partnership. The face amount of damages sought was over a million dollars. The Reade partnership would seem to have been a general one, carrying the ordinary personal responsibility of the firm members. The Staley matter therefore of necessity was of major concern to the Reades individually. In addition it was undoubtedly important to them as stockholders of the corporation not so much from the standpoint of the corporation's responsibility for the claim since it had not assumed the obligation[2] as from the resultant damaging publicity.

■ In the situation it was the taxpayer's burden to go forward and establish its right under the statute to the deductions, i. e. that they are " * * * ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Internal Revenue Code 1954, 26 U.S.C. (1958 ed.) § 162.

The taxpayer urges that "the entire transaction stemmed from a single purpose. The preservation and protection of its existing business in the face of a serious threat to its continued existence." It places its reliance upon Catholic News Publishing Co., 10 T.C. 73 (1948) asserting that the facts here are indistinguishable from that decision. Actually they differ fundamentally. In Catholic News, the president of the corporation was only a ten per cent stockholder. The balance of the stock was owned by his son and his father's estate. The president was involved in a bitter personal feud with a publisher's associa-

---

1. It would seem that appellant's first point is not pressed; whether it is or not, we find it without merit. It does not call for discussion.

2. Complications to the corporation of course might possibly have ensued in the event Staley obtained a judgment against the partnership and followed its assets into the corporation. This is not dealt with at all in the Stipulation of Facts.

tion relative to some moneys collected during his term as treasurer thereof. The dispute became of vital concern to the corporation. The president refused to make any payment to the association. "Finally (as the Findings of Fact state p. 75) to prevent further criticism injurious to petitioner's reputation and to its business, its board of directors flatly instructed Ridder to effect an immediate settlement of the dispute. He would have prolonged the dispute indefinitely, except for the directors of the board; * * *." The Tax Court held (p. 76) "From that point on Ridder was acting not as a mere individual to settle a personal claim against himself. Rather he was acting as an agent of the petitioner to bring about the settlement of a controversy which, in the opinion of the directors, materially and adversely affected its business."

In this appeal we do have the corporation opinion that the Staley suit would materially and adversely affect its business. There is no other element helpful to taxpayer. The two Reades, the partners with the unquestioned primary and personal responsibility, individually initiated, conducted and concluded the settlement. At the time the suit was instituted against the partnership alone, the Reades, after talking with their lawyer, felt they could successfully defend the suit and they therefore decided to fight the case. After that the corporation was joined as a defendant and answered, denying it had ever assumed liability for the Staley claim. Then without pressure or directive from the corporation, with no agreement whatsoever that the corporation would pay all or part of a settlement or reimburse

them for payments they might make, the Reades, completely on their own, disposed of the Staley law suit and claim. There was no authentic agency relationship between the Reades and the taxpayer. With the facts in this suit as they are the Catholic News decision has no application.

■ The payments before us in the Staley settlement were made by the taxpayer in 1953 and 1954. Both those dates were years after the settlement which had eliminated the source of danger to the corporation business. It follows that the payments did not qualify under the statute as "necessary".

That brings us to the question of whether there was a moral obligation on the part of the taxpayer to make the payments and if so, does that bring it within Section 162. In Catholic News the Tax Court held, "And, even if there was no express understanding, petitioner was obligated in equity and good conscience to reimburse Ridder, * * * in view of the fact that it had directed him to settle a claim for which he denied all personal liability and which he would not have otherwise paid." None of those elements is present in this appeal. The corporation did not direct or intimate that the Reades should settle; the Reades would have been personally liable in the event the partnership product was found to be responsible for the damage caused by the soy sauce; there is no indication that at the time the Reades settled with Staley, they would not have done so except for the corporation situation. Clearly, no moral obligation of the taxpayer to take care of the personal obligation of the Reades has been established.[3] Rather the payments

---

3. Holding as we do, there is no need of our now examining at length the problem of whether an authentic moral obligation is sufficient to justify a deduction under Section 162. We simply note that in Farnsworth v. Commissioner, 270 F.2d 660 (3 Cir. 1959), taxpayer inter alia felt himself bound by a moral obligation. He also had strong family reasons for his action. We accepted the Tax Court's finding that he had gratuitously assumed

the obligations and that therefore his settlement payments were not a business necessity. And in Commissioner of Internal Revenue v. Gilt Edge Textile Corporation et al., 173 F.2d 801 (3 Cir. 1949), we held that the corporation's payment was a gift to its president—majority stockholder for his sole benefit and that consequently no moral obligation existed.

were gratuitously assumed by the Reade corporation. It cannot be glossed over that the Reades were the partnership; they are the corporation. The settlement eliminated a possibly substantial personal liability; the way it was paid out was helpful to them taxwise by their corporation obtaining a deduction under Section 162. That deduction cannot be sustained under the facts or law.

The judgment of the district court will be affirmed.