MONTGOMERY ENGINEERING COM-
PANY, William Hecht and May
Belle Hecht, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 283-62.

United States District Court
D. New Jersey.

June 17, 1964.

Lowenstein & Spicer, Newark, by Murry D. Brochin, Newark, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., by Martin Holleran, Asst. U. S. Atty., and Solomon Fisher, D. C. Bar, for the United States.

WORTENDYKE, District Judge:

This case was tried to the Court without a jury. Jurisdiction in this Court derives from 28 U.S.C. § 1346(a) (1).

Plaintiff, Montgomery Engineering Company, a New Jersey corporation (hereinafter the Company) with its place of business in Jersey City, seeks a refund of alleged overpayments of Federal Income Taxes for the calendar years 1957, 1958 and 1959, for assessed deficiencies based upon disallowance, as non-deductible corporate expense, of payments made by the Company to the surviving widow of Oscar T. Nicholson, a deceased Executive Vice-President and stockholder of the corporate taxpayer. Payment of the assessed deficiencies was made on May 12, 1961, and claims for refund were filed on May 22, 1961 with the District Director of Internal Revenue at Newark, New Jersey.

Plaintiffs William Hecht and May Belle Hecht are husband and wife, citizens of the United States and residents of New Jersey. Deficiencies based on their failure to include in William Hecht's income, as a dividend, the Company payment to the widow, were assessed against the Hechts on May 5, 1961 with respect to the amount of Federal income taxes paid by them in a joint return for their taxable years 1957, 1958 and 1959. These deficiencies were paid on May 11, 1961 and claims for refund thereof were filed on May 22, 1961 with the District Director of Internal Revenue at Newark, New Jersey. Mr. Hecht was the founder of the Company and its president until 1960,

when be became Chairman of its Board of Directors.

By written stipulation filed in this cause, the parties have agreed that if the amounts on which the deficiencies were assessed constituted distributions to Mr. Hecht, then, for the purpose of determining the extent to which such distributions constituted dividends, the earnings and profits of the Company, all of which had been accumulated subsequent to its organization in June 1929, were not less than the following amounts on the dates indicated:

| | |
|---|---|
| January 1, 1957 | $412,727.65; |
| Dec. 31, 1957 and Jan. 1, 1958 | 375,873.86; |
| Dec. 31, 1958 and Jan. 1, 1959 | 424,210.27; |
| December 31, 1959 | 487,617.36. |

The stipulation further disclosed that Oscar T. Nicholson died in the early morning of March 29, 1957. At the time of his death he was an officer, stockholder and director of the Company of which he had been an employee since 1930. He had lived apart from his wife, Rosalie V. Nicholson, and their children, for approximately nine years preceding his death. The animosity which had developed on his part against them persisted unabated throughout that period. On February 6, 1948, William Hecht, individually and as president of the Company, and Oscar T. Nicholson, entered into a written agreement. That agreement recited that Hecht and Nicholson were collectively the holders of all of the outstanding stock of the corporation, with the exception of one qualifying share held by May Belle Hecht, the wife of William Hecht. With the stated object of controlling the sale and disposition of the stock of the Company, and obligating the Company to purchase and the stockholders to sell their stock upon the occurrence of the contingency thereinafter referred to, the agreement provided that neither of the individuals would sell, encumber or dispose of any of his stock in the Company until he had first offered it for sale to the other stockholder. The parties further agreed that, upon the death of either of the stockholders, the Company would buy and the estate of the stockholder would sell to the Company, all of the stock owned by the decedent, to be paid for by the Company at book value as shown by the balance sheet of the Company as of the end of the month next preceding the date of the offer, or of the death, as the case may be.

As of December 31, 1956, the total number of shares of common stock of the plaintiff corporation outstanding was 1,000, of which William Hecht was the owner of 535 shares, his wife, May Belle Hecht, of one share, and Oscar T. Nicholson of 464 shares. Following the death of Nicholson, the Company purchased his stock, in accordance with the agreement of February 6, 1948, for $233,577.60.

In and by his last will and testament, dated February 17, 1954 and admitted to probate on April 9, 1957, which had been drawn by Barney Larkey, Esq., a member of the Bar of this State, Nicholson bequeathed to a woman not his wife, with whom he had become personally involved, his household furniture and furnishings, and the balance to his credit in a bank account in Jersey City, and he devised and bequeathed to his friend, William Hecht, all of his residuary estate. The will expressly provided in part as follows:

"FIFTH: I purposely make no provision herein for my wife, Rosalie Violet Nicholson, or for my children, Rosalie Nicholson, Peggy Nicholson and George Charles Nicholson, it being my intention to expressly exclude them from this, my Last Will and Testament, and I specifically direct and will that, under no circumstances, shall any part, share or interest in my estate go to, vest in, or be taken by any of them, or by any descendants of my said children now or hereafter born."

In his said will, Nicholson appointed William Hecht and Barney Larkey as his executors and they duly qualified. William Hecht was unaware, prior to being advised by Larkey after the death of

Nicholson, that he, Hecht, was the principal beneficiary and co-executor of the will. At the time the will was drawn, Nicholson had been separated from his wife and children for about six years. He told Larkey of a raid his wife had conducted and of criminal charges she had made against him, and the woman with whom he had become personally involved.[1] Nicholson told Larkey that the reason he didn't want his wife and children to receive anything was because he felt extremely bitter against them.

William Hecht was present at the hospital when Oscar Nicholson died. Hecht thereupon notified Louis Dince, the Company's auditor, of Nicholson's death, requested that Dince make an audit of the Company's books for purposes of applying the stock purchase agreement of February 6, 1948, and suggested to Dince that he devise some method by which provision could be made by the Company for Nicholson's widow. They discussed possible procedures on March 31, 1957, and on April 2, 1957 they conferred with Larkey, the Company's attorney, at the latter's office. On April 22, 1957, meetings of the stockholders and of the directors of the Company were held at the Company's office in Jersey City. The directors there adopted the following resolution, presented by Hecht:

"RESOLVED, that the Company, in recognition of past services rendered to it by Oscar T. Nicholson, now deceased, shall pay to his widow, Rosalie V. Nicholson, the sum of $50,000.00 which sum shall be paid to Mrs. Nicholson as follows: $12,-500 on October 22, 1957, $12,500 on April 22, 1958, $12,500 on October 22, 1958, and $12,500 on April 22, 1959."

A similar resolution was adopted by the stockholders of the Company at their meeting on the same date at the same place. The four payments were actually made by the Company on or prior to the dates specified in the resolution.

The provisions of Nicholson's will were disclosed to his widow by Hecht on April 6, 1957, following dinner at his home, at which she and two of her children were guests. Mrs. Nicholson was not a witness at the trial, but Hecht testified that when he had read her husband's will to her, she commented that she had not expected anything different, but was glad that the testator had left his estate to Hecht rather than "to that other woman." Hecht testified that he thereupon assured her that he would see that she would not be in need, and that she would be provided for by the Company. He further advised her that he was aware that she had been receiving weekly support payments from her husband during his lifetime and that he (Hecht) would see that she got "a good portion in continuity." By the quoted phrase, he explained to her that he meant $100.00 a week for life.[2] Hecht then advised Mrs. Nicholson that her husband and Hecht had purchased two pieces of land at a tax sale in Jersey City, for use as a parking space appurtenant to the Company's place of business, and that title thereto had been taken by him and Nicholson in their individual names, thus creating a dower right in her husband's share of the property in her favor. He says he offered Mrs. Nicholson $2,500 for her dower interest, and that she accepted. A check of William Hecht in that amount dated April 22, 1957, evidences his payment thereof to Mrs. Nicholson. This check had been endorsed by Mrs. Nicholson

1. The parties to this action have stipulated that certain newspaper articles, copies of which are annexed to the stipulation as exhibits, containing reports of Mrs. Nicholson's accusations against her husband, charging illicit relations with the other woman, were received by Mr. Nicholson and by him brought to the attention of Mr. Larkey and Mr. Hecht.

2. Because she was uncertain whether Hecht's assurance that she would receive $100 weekly for her life was dependent upon the continuance of his life, Mrs. Nicholson asked for a single lump sum payment in lieu of the suggested weekly payments. She consulted counsel respecting the matter, and his negotiations with Hecht and Larkey effected an agreement upon a single payment of $50,000 to her.

and deposited to the account of her attorneys.

On April 8 Hecht discussed with Mrs. Nicholson, by telephone, payment to her by the Company of the aggregate of three weekly support installments which were in arrears, and sent her a Company check for $300 on the same date. Two additional Company checks for $100 each were sent to her, respectively, on April 12 and 19; but none of these payments was authorized by the directors or by the stockholders of the Company.

The claims for refund asserted by the corporate plaintiff are based upon its contention that its payment of $50,000 in four installments to Rosalie V. Nicholson was, as recited in the resolution of the board of directors of the Company, adopted April 22, 1957, "in recognition of past services rendered to it by Oscar T. Nicholson, now deceased" and the status of Rosalie V. Nicholson as the surviving widow of said decedent. In ·its trial brief, the corporate plaintiff states that the sole legal issue in the case "is whether the payment by a corporation to the widow of a deceased key employee of an amount equal to one year's salary of the employee, in recognition of services rendered to the corporation by that employee during his lifetime, constitutes an ordinary and necessary business expense deductible in the year paid under either

section 162(a) or section 404(a) (5) of the Internal Revenue Code of 1954." [3] The individual plaintiffs allege in the complaint that the payments made by the corporation to Mrs. Nicholson "were made solely by, on behalf of, and for the benefit of the corporation in appreciation of the past services of Oscar T. Nicholson to the corporation, and in order to encourage the loyalty of other executives. The said payments were not made for the benefit of the Hechts or either of them."

The evidence presented to me on the trial of this case failed to bring the payments made by the Company within any of the categories mentioned in the language of the sections of the Code upon which the Company relies. Despite the testimony of Mr. Hecht, and such portions of the testimony of his wife and daughter tending to disclose his previous paternalistic beneficence toward employees of the corporation of which he was the controlling stockholder, it is impossible to envision the $50,000 paid by the Company to Mrs. Nicholson as a necessary or proper subject of corporate expenditure, or as tending to stimulate employee loyalty or advance the financial interests of the corporation. Conceding that Mr. Nicholson had given long and efficient service to the corporation during his lifetime, and contributed substantial-

---

3. Section 162(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 162(a)), provides in pertinent part, as follows:

"§ 162. Trade or business expenses

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

Section 404(a) (5) of the same Code (26 U.S.C. § 404(a) (5)) provides in pertinent part as follows:

"§ 404. Deduction for contributions of an employer to an employees' trust or annuity plan for compensation under a deferred-payment plan.

"(a) General rule.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity

plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amount deductible in any year: * * *.

     *     *     *     *     *

"(5) Other plans.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are non-forfeitable at the time the contribution or compensation is paid * * *."

ly to its financial success, he had risen through the ranks from a weekly wage of $25.00 to the annual salary of $50,000 which he was receiving at the time of his death. He had, moreover, advanced through the echelons of management to the positions of executive vice-president and director. Not only did the corporation owe Nicholson nothing, but it was under no obligation whatsoever to extend charity to his surviving widow and children, especially in the face of the decedent's mandatory testamentary direction that the widow and children should receive no benefit whatsoever from his estate. No reason appears, nor is any motive disclosed, for the application of corporate assets to the alleviation of the necessities of the widow and children of its deceased former officer. No corporate plan, scheme or arrangement for the benefit of the families of deceased employees was shown.

Mr. Hecht, who was the principal stockholder and controlled the directors' and stockholders' meetings on April 22, testified that the motive for the resolutions was " * * * to take care of the widow with regard to her husband's service, faithful services for a long period of time; [and] * * * I think morally, and from a human feeling, it was setting forth a good example for every employee in the Company that we are still one family. * * * I only performed my moral obligation as a corporate officer in the proper direction * * * to the Company, to its staff, and setting forth an example of the ethical and proper thing to do." He testified that he did not feel that he had a personal moral obligation to Mrs. Nicholson, nor did he make the payment to her for any services she had rendered to the Company. Mrs. Hecht, who is also a director, testified that the reason for the resolution was to set a good precedent among the other employees and to give them initiative to work for the Company. She further testified that the resolution was made because the widow should not be left penniless in light of Mr. Nicholson's long, hard years of service to the Company. Mrs.

Hecht's principal reason was to protect the memory of Mr. Nicholson's long service with the Company. The remaining director, Mrs. Kessler (the Hechts' daughter), testified that, prior to the April 22 meeting, her father had discussed with her his feeling that the Company owed Mrs. Nicholson something after all the years she had been married and the many years her husband had been with the firm, and that it was not right she be left without any money. He told her that he felt this was a moral, not a legal obligation.

The Company had no established plan for the payment of benefits to the widows of deceased employees, nor was there any evidence that it had ever before adopted a resolution in any way like the one which authorized the payments to Mrs. Nicholson. It had once, in the past, because that widow was penniless, continued for nine months the salary of an employee (an apprentice mechanic) who had died suddenly of a heart attack. In that case, however, the employee and his widow had not been separated at the time of his death. In addition, there had been no corporate resolution authorizing that earlier payment; and Mr. Hecht testified that he had had no understanding with Mr. Nicholson that a payment would be made, on his death, to his widow. The Company never informed its employees that, on their deaths, payments would be made to their widows, and, in the case of the payments to Mrs. Nicholson, there was no evidence that the adoption of the April 22 resolution and the payments to her were ever made known to the other Company employees.

Mrs. Hecht admitted that one of the reasons for the payment to Mrs. Nicholson was that she, Mrs. Hecht, knew that Mrs. Nicholson was not receiving anything but her home under the will. And Mrs. Kessler, the Hechts' daughter, testified that her father, at the April 22 directors' meeting, had " * * * stressed the moral implications [in adopting the resolution]. He made it quite clear that he did not feel Mr. Nicholson had done the right thing by cutting his family off

in the will and that we had an obligation to right this wrong." She also testified that this was one of the reasons why she voted for the resolution.

Mr. Hecht admitted that, at the time of the April 22 resolution, he knew of the great bitterness between the Nicholsons, of the newspaper articles regarding Mrs. Nicholson's charges against her husband and another woman, of the fact that that woman had visited Mr. Nicholson in the hospital during his last illness, when Nicholson had refused to see his wife and children, and that Mr. Nicholson had put a specific provision in his will that his wife and children be cut off from receiving any part of his estate. Mrs. Hecht also admitted she knew the same facts on the date the resolution was passed. Yet Mr. Hecht claimed that, in spite of this knowledge, he felt it was necessary to make a payment to Mrs. Nicholson, in recognition of her husband's services, " * * * to maintain the moral and proper spirit of the company employees and the company growth."

Mr. Hecht also admitted that in no prior case of Company payments to widows of employees had they been separated from their wives. Significantly, he was unable to answer the following question put to him on cross-examination: "Do you think it would improve an employee's moral[e], one of your employee's moral[e], if he knew upon his death his company, the company that employed him, was going to make payments to somebody that he did not want to receive money? "

█ I find, upon the preponderance of the evidence presented on the entire plaintiffs' case, that the reason for the $50,000 payment to Mrs. Nicholson was that Mr. Hecht felt that he had a personal moral duty to right the wrong which he felt her husband had done to her and her children. His motivation was a purely personal one, that is he, as a human being who had known both husband and wife and their family for many years during which they helped his business grow and prosper, felt obligated to correct an injustice which had grown out of what he

regarded as an unfortunate bitterness between the Nicholsons. He had remained friendly with both Mr. and Mrs. Nicholson after their separation and up to the date of his death.

This altruistic attitude on the part of Mr. Hecht is neither surprising nor unusual. His daughter testified that he frequently gave her and his grandchildren moral lessons. In operating the Company, Mr. Hecht pursued a similar standard of moralistic behavior. He regarded his employees as a business family; the Company, of which he was the principal stockholder, helped employees to finance the purchase of homes, made them small loans without interest, gave each a Christmas bonus of two-week's salary, and a gift for each employee's wife and children, started a $25.00 bank account in the name of each new-born child, and adopted a profit-sharing plan for all the employees. The Company had also continued on full salary several employees while they were ill for long periods of time, and had, as noted above, continued for nine months to pay to the widow, the salary of an employee who had died suddenly.

Undoubtedly, Mr. Hecht's altruism in operating his Company has a double aspect; it represents both his general moral character and his application of that character in the conduct and for the purposes of his business. The Company's payment to Mrs. Nicholson, however cannot be said to have been made for any purpose related to the business of the Company. It is difficult to see how a payment to a widow, whose deceased husband specifically directed that she was to receive nothing from his estate, could be regarded as any incentive to other employees to work harder for the Company. Nor can the payment be regarded as having been made for a business purpose, insofar as it set an ethical example for the Company's employees, since, in this case, there was no set Company policy of such payments to widows, and the employees were not notified in any way of the resolution and payment to Mrs. Nicholson.

The significant fact is that Mr. Hecht had known both the Nicholsons long before their separation, and had regarded them as part of his corporate family. He continued his affectionate regard for both after the separation, and he felt personally that Mrs. Nicholson had been wronged by her husband's will. He, therefore, had the Company make the payment to Mrs. Nicholson, to right the wrong Mr. Nicholson had done. Such a payment could in no way be construed as having been made for the purpose of "carrying on any trade or business" or as having been directly connected with the business of the Company. United States v. Gilmore, 1963, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570; Kornhauser v. United States, 1928, 276 U.S. 145, 153, 48 S.Ct. 219, 72 L.Ed. 505; Commissioner v. Heininger, 1943, 320 U.S. 467, 470, 64 S.Ct. 249, 88 L.Ed. 171. The payment, therefore, was not properly deducted by the Company as an expense under 26 U.S.C. § 162(a) [nor under 26 U.S.C. § 404(a) which provides that the requirements of § 162 be met in order to be deductible under § 404]. It is therefore unnecessary to decide whether the payment to Mrs. Nicholson was either "ordinary" or "necessary" under § 162. Cf. Interstate Drop Forge Co. v. Commissioner, 7 Cir. 1964, 326 F.2d 743, 747; Schner-Block Co. v. C.I.R., 2 Cir. 1964, 329 F.2d 875.

For the same reasons, there is no evidence to support the claim of the individual plaintiffs, Mr. and Mrs. Hecht, that the total payment to Mrs. Nicholson was not a dividend to Mr. Hecht. The Company's payment of $50,000 to the widow was made, as I have determined, to satisfy Mr. Hecht's personal desire to right the wrong he thought had been done to the widow by Mr. Nicholson. The payment was made by the Company solely for Mr. Hecht's benefit and personal gratification in correcting what he felt was an injustice, and it was therefore a constructive dividend to Mr. Hecht and should have been included in Mr. and Mrs. Hecht's joint income tax returns for the years in question. Holsey v. C.I.R., 3 Cir. 1958, 258 F.2d 865, 868; W. D. Gale, Inc. v. C.I.R., 6 Cir. 1961, 297 F.2d 270.

The foregoing facts are based solely on the evidence presented by the plaintiffs. At the end of the plaintiffs' case, I granted the Government's motion to dismiss the complaint as to all plaintiffs, and this opinion has been written to embody my findings of fact and conclusions of law in granting the Government's motion, in compliance with the requirements of Rule 52(a), F.R.Civ.P.

The corporate plaintiff has failed to sustain its burden of proving that it had the right to deduct the payments under 26 U.S.C. § 162 [and 26 U.S.C. § 404(a)], Reade Manufacturing Company v. United States, 3 Cir. 1962, 301 F.2d 803; and the individual plaintiffs have failed to sustain their burden of proving that the payments to the widow were not constructive dividends to Mr. Hecht, Louisville Chair Company v. United States, 4 Cir. 1961, 296 F.2d 621.

Because of the views expressed above, I have found it unnecessary to reach the Government's alternative theory in this case that the payment to the widow was made in settlement of a threatened will contest by her against Mr. Hecht. Although the testimony of the attorney who represented Mrs. Nicholson was taken as part of the Government's case (in the event the motion to dismiss was denied), my conclusion to grant the Government's motion to dismiss has been reached without reference to that testimony, and is based solely on the evidence adduced by the plaintiffs.

Because the plaintiffs have failed to carry the burden of proof cast upon them to support their claims for refunds, judgment of dismissal of the complaint with prejudice and costs, will be entered. Please submit order for judgment.