**ESTATE of Joseph P. MORGAN, deceased and Margaret Koehler Morgan, surviving spouse, et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 19746.

United States Court of Appeals
Fifth Circuit.
May 22, 1964.

---

22. See Thode, supra, note 4, at 283–284, grouping Florida with 22 other states using the motion practice.

W. H. Talbot, New Orleans, La., Edmund L. Brunini, Brunini, Everett, Grantham & Quin, Jackson, Miss., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Alan D. Pekelner, Crombie J. D. Garrett, Attys., Dept. of Justice, Crane C. Hauser, Chief Counsel, I.R.S., J. M. Morawski, Atty., I.R.S., Washington, D. C., for respondent.

Before HUTCHESON, RIVES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The controversy presented by this case involves the deductibility of certain expenses [1] for the years 1956 and 1957 arising out of litigation. The taxpayers [2] deducted the expenses in their 1956 and 1957 income tax returns, and contend that they were authorized to do so under Section 162 or Section 212, Internal Revenue Code of 1954. The Com-

---

1. The expenses involved were classified as attorneys' fees, general expenses, and expenses of bond. Attorneys' fees constituted the major part of all such expenses.

2. Several taxpayers are involved in the litigation, but the substantial questions to be decided are common to all suits. The proceedings were consolidated for hearing in the Tax Court, and they are consolidated here and considered as one case.

missioner disallowed the deductions. The Tax Court prorated the amount taxpayers expended in the litigation between defense of income and defense of title.[3] The Government contends that the decisions of the Tax Court are correct in all respects and seeks to sustain its position under Section 263 and certain Treasury Regulations on income tax, Internal Revenue Code, 1954.[4]

The facts with respect to the litigation out of which the expenses involved in this case arise are fully and fairly stated and may be found in the opinion of the District Court, Stricker v. Morgan, 158 F.Supp. 830 (D.C.S.D.Miss. 1958), and the opinion of this Court affirming the District Court, Stricker v. Morgan, (C.A.5th 1959) 268 F.2d 882. Most of the facts are stipulated. We deem it necessary to set forth only an abbreviated statement of the facts. R.

M. Stricker sued Joseph P. Morgan and his partners in the Louisiana Box and Lumber Company,[5] alleging in that litigation that he had been in a co-partnership with Morgan since the year 1935. He demanded an accounting of Morgan which he contended Morgan had refused to provide, and he sought to establish his ownership of an undivided one-half interest in the oil producing Esperance property, referred to as the Esperanza Plantation. Stricker claimed that Morgan received as profits, over and above the original cost of the plantation, in excess of $500,000 for which he sought an accounting. He alleged that Esperanza should be valued at approximately $3,000,000.

Over a period of years Stricker and Morgan had business dealings with each other. Stricker located various stands of timber, arranged for their purchase

---

3. The opinion of the Tax Court is officially reported at 37 T.C. 31 (1961).

4. The statutes and regulations involved are as follows:
"Internal Revenue Code of 1954:
§ 162. Trade or business expenses
"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;"
* * * * *
(26 U.S.C.1958 ed., Sec. 162.)
§ 212. Expenses for production of income
"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
"(1) for the production or collection of income;
"(2) for the management, conservation, or maintenance of property held for the production of income; or
"(3) in connection with the determination, collection or refund of any tax."
(26 U.S.C.1958 ed., Sec. 212.)
§ 263. Capital expenditures
"(a) *General rule.*—No deduction shall be allowed for—
"(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. This paragraph shall not apply to—
* * *
(26 U.S.C.1958 ed., Sec. 263.)
Treasury Regulations on Income Tax (1954 Code):
Sec. 1.212–1. *Nontrade or Nonbusiness Expenses.*
* * * * *
(k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. * * *
* * * * *
Sec. 1.263(a)–2. *Examples of Capital Expenditures.*
The following paragraphs of this section include examples of capital expenditures:
* * * * *
(c) The cost of defending or perfecting title to property."

5. The partners were Morgan, his son, E. C. Morgan, and Fred N. Owen. Mr. Owen is not involved in this case.

and then found buyers for various portions of the timber. After the tracts of land were located, Morgan would purchase the timber, and on occasions he took title to the land as well as the timber. After the timber had been sold, Morgan would take back his costs from the proceeds of sale and the profits would be divided between Morgan and Stricker.

Morgan purchased the Esperanza Plantation in Concordia Parish, Louisiana, in 1940. The land and timber were conveyed to Morgan. During the 1940's Morgan granted oil leases on the property, oil was discovered in 1950, and production was commenced. Morgan retained a one-eighth royalty interest and thereafter transferred a portion of the royalty interest to members of his family. Suit was initiated in the State Court in Mississippi and was removed to the United States District Court for the Southern District of Mississippi on the grounds of diversity of citizenship.

When Stricker filed his suit in 1955, the petroleum company producing the oil ceased to make the royalty payments to the owners. In order to avoid certain inconveniences and income tax disadvantages resulting from bunching income from the royalty, arrangements were made between the oil company and the owners to have the payments continued during the litigation. The royalty payments were continued. During the course of the litigation Morgan was determined to be incompetent and his wife was appointed curatrix of his person and property. Expenses were incurred in the incompetency proceeding and in the arrangements to achieve a continuous flow of royalty income, in-

cluding the execution of a bond to protect the oil company.

In the litigation between Stricker and Morgan it was determined that Stricker did own an undivided one-half interest in all timber on Esperanza and was entitled to an accounting with respect to it. As a result of the accounting as to the timber, Stricker received approximately $300. The Court found that Stricker had no other interest in the land. All of the royalty owners agreed to share pro rata all expenses resulting from the defense of the suit and expenses connected with the release of royalty payments and the incompetency proceedings.

In the Tax Court the Government took the position that none of the claimed expenses were deductible because they were incurred in litigation to defend title to property and should be treated as capital expenditures.[6] The taxpayers initially contended, as they do now, that they were entitled to deduct the full amount of the expenses under the mentioned Code sections; or, in the alternative, that they were entitled to a proration of such costs. The Tax Court, observing that the result would be the same under either Code section relied on by the taxpayers (§ 162 or § 212), dealt only with Section 212 which relates to the deduction of expenses for the production of income.

The Tax Court found that 90% of the time expended was used in the preparation and presentation of the defense in the Stricker litigation, and 10% of it was used to release the royalty payments and to have Morgan declared incompetent.[7] It further concluded that the objectives of the Stricker suit in-

6. It is clear that expenses incurred in defending title to property cannot be deducted under Section 212 but are capital expenses. United States v. Wheeler, (C.A.5th 1962) 311 F.2d 60; Brown v. Commissioner, 215 F.2d 697 (C.A.5th 1954), affirming on this issue 19 T.C. 87 (1952); Louisiana Land & Exploration Co., 7 T.C. 507 (1946), affd. 161 F.2d 842 (C.A.5th 1947); Jones' Estate v.

Commissioner, 127 F.2d 231 (C.A.5th 1942), affirming 43 B.T.A. 691 (1941).

7. The taxpayers offered proof to the effect that "just at 80%" of the total time was spent in review and analysis of the books, records, etc., of Stricker, Morgan, Louisiana Box and Lumber Company, and others; "just at 10%" was spent in law research and actual trial of the Stricker suit; and "just at 10%"

-volved the title to property (non-deductible), and income from it (deductible) and that an apportionment of expenses should be made.[8] We agree with the foregoing conclusions.

The Tax Court held that neither objective of the Stricker litigation was predominant. Accordingly, the legal fees incurred were prorated, and 1/6 of the portion spent directly on the Stricker litigation was allowed as a deduction, but the remaining 5/6 was not allowed because that portion was considered as expended in defense of title. Of the remaining portion—the 10% relating to the royalty payments and the incompetency proceedings—¾ was found to relate to the bond given for the release of the royalty payments and was allowed as a deduction. One-half of that portion of the other ¼ actually paid from Morgan's funds was held to be deductible because it related to income producing property. Other taxpayers were not allowed to deduct any part of the ¼ found to have been expended on the incompetency proceeding. The 1/6 and the 5/6 proration was determined by using a figure "in excess of $500,000" which Stricker claimed was involved in the accounting as a numerator, and the value of the Esperanza Plantation, alleged by Stricker to be "in excess of $3,000,000" as a denominator. The notices of deficiency valued the property "in excess of $2,000,000." [9]

was spent in connection with income tax problems, release of royalty payments and the interdiction of Morgan.

8. As to apportionment, see Ditmars v. C. I. R., (2nd Cir. 1962) 302 F.2d 481; Daniel S. W. Kelly, 23 T.C. 682, 689 (1955); aff'd 228 F.2d 512, (C.A.7 1956).

9. The following is from the opinion of Judge Fay of the Tax Court:

"Ninety percent of the time expended by the attorneys was used in preparing evidence and doing legal research for the presentation of the defense in the Stricker litigation and in defending the suit in Court, and ten per cent of their time was used to release royalty payments during the litigation and to have Morgan declared incompetent.

\*　　\*　　\*　　\*　　\*

"Where, as here, both property and the income from it have been the objectives of a suit and neither is predominant, an apportionment has been made. Daniel S. W. Kelly, 23 T.C. 682, 689 (1955), affd. 228 F.2d 512 (C.A.7, 1956), and Estate of Thomas E. Arnett, 31 T.C. 320 (1958). The evidence available for use in making this apportionment is not entirely satisfactory. However, judging from the income from the royalty shown for the years 1956 and 1957 on the tax returns which are before us, it would seem that the amount alleged by Stricker in his bill of complaint was not excessive. That amount was 'in excess of $500,000.00.' The value of the property must also be determined. The notices of deficiency valued the property as "in excess of $2,000,000.00.' Stricker, in his bill of complaint, placed the value 'in excess of $3,000,000.00.' In view of the income factor, the higher value appears to be more reasonable. Using these figures, one-sixth of the fees and expenses, after allowance for items separately treated hereinafter, should be alowed as a deduction under section 212 of the Code.

\*　　\*　　\*　　\*　　\*

"Since 75 percent of the portion of the fees and expenses pertaining to the bond and the incompetency proceedings has already been allocated to the bond, the remaining 25 percent is allocated to the incompetency proceedings. Since Morgan's income tax returns reveal substantial income-producing property, we consider one-half of this sum as pertaining to property held for the production of taxable income. Of this, however, only that portion paid from Morgan's funds is deductible because this is solely the expense of Morgan. We deem him to have contributed to this sum in proportion to his ownership in the retained royalty interest."

In the computation statement in explanation of the adjustment pursuant to the decision of the Tax Court, the following deductions were allowed: (a) 1/6 of 90% of the attorneys' fees and general expenses claimed as expenses of defending past income of property; (b) 75% of 10% of attorneys' fees and general expenses claimed to continue royalty payments; (c) separate bond expenses, and (d) as to Morgan only (not allowed to other taxpayers) ½ of 25% of 10% of the attorneys' fees and general expenses paid by Morgan funds in connection with incompetency proceeding.

The attorneys who represented taxpayers in the Stricker litigation testified before the Tax Court that hundreds of hours were spent by counsel in reviewing ledgers, journals, records, income tax returns and other correspondence of Stricker, Morgan, Louisiana Box and Lumber Company, and other parties with whom the two had dealt for an extended period commencing in 1922 to the date of the trial; that it was necessary to employ a Certified Public Accounting firm to assist in the examination of said records; that weeks were spent in conferences with Stricker's accountants; that nine of the thirteen volumes of the record of the Stricker litigation contained testimony on the accounting and handling of the various transactions; and that the records as to the Esperanza transaction were only a small portion of the total records, books, and correspondence put in issue.

In Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928), the Supreme Court allowed a deduction for attorney's fees incurred in the defense of an accounting suit by a former partner, in which the former partner had unsuccessfully claimed an interest in certain stock held by the taxpayer. The Supreme Court stated the following principle:

> " * * * [W]here a suit or action against a taxpayer is directly connected with, or * * * proximately resulted from, his business, the expense incurred is a business expense * * *."

However, in Kornhauser the lower court had not made a determination that the original suit was not primarily an accounting action—as has been done in the present case—but instead, the lower court had considered the expense to be personal. The question in the case at bar is not personal versus business expense; rather, it is business expense (as per § 162 or § 212—immediately deductible) versus capital expense (as per § 263 or Regulations—eventually deductible). Rassenfoss v. C. I. R., (C.A. 7, 1946), 158 F.2d 764, dealt with a decision in which the Tax Court had determined that legal fees were to be capitalized and not deducted. A former associate had sued for an accounting and a determination and adjudication of his right in and to the partnership assets. After holding that the Tax Court's determination as to the meaning of the Revenue Code was a question of law and not one of fact, the Court concluded:

> "Laying aside the legal question as to whether petitioner had any title to the partnership assets, it is perfectly plain, so we think, that the main and primary purpose of the suit which petitioner defended was for an accounting and any question of title was merely incidental thereto. This is borne out by the compromise which was finally effected, by which Campbell was awarded almost an infinitesimal and only a limited interest in the partnership."

While expressly giving the lower court's determination great weight, the Court of Appeals concluded, contrary to the lower court, that the nature and purpose of the litigation was not to establish or defend title, but to protect and defend income.

The Second Circuit in Hochschild v. Commissioner, 161 F.2d 817 (2nd Cir. 1947), allowed a full deduction of attorneys' fees expended by a director of a corporation in the defense of a stockholder's derivative action in which the plaintiff sought to impress a trust upon certain stock held by the director.

> "Regardless of what effect an adverse decision might have had upon the title to his Climax stock, it was necessary for him to defend the lawsuit to protect himself from being compelled to account generally * * *. We cannot agree that these fees which the petitioner paid in defense of the lawsuit were any the less deductible because his liability, if proved, might have destroyed his equitable title to the stock he held. His right to keep it

was certainly in issue and in that sense his title to it was defended, to be sure, but the title as such was not perfected in any way by his expenditures for legal assistance."

In Hochschild apparently the Court felt that the suit was primarily one for money damages, and that the question of ownership of the disputed stock was merely incidental in proving the money damages. As was done in Rassenfoss, supra, the Court simply found that the lower court was in error in finding that the expense incurred by the taxpayers was to defend title to property.

■ A recent District Court case, Price v. Usury, (E.D.La.1962) 209 F.Supp. 660, affirmed by this Court in 325 F.2d 657 (C.A.5, 1963), held that, where the disputed attorneys' fees resulted from the defense of a concursus proceeding arising from the assertion of adverse title claims, which claims had been previously defended successfully against the same claimant, such fees were not expended in defense of title, but "in an effort to acquire income from property previously vested in the taxpayers." The Court stated that the suit was not a real title suit but was a mere "re-hash" of the prior suit, which because of the state laws, taxpayer was bound to defend. The fees arising out of the prior suit were not deductible; those arising out of the latter were deductible. Contending that cases from this Circuit support their position, the taxpayers rely on Allen v. Selig, 200 F.2d 487 (5th Cir. 1952) as authority for the allowance of a full deduction of the legal fees. In Allen we held that the District Court was correct in its determination that the taxpayer's expenditures of legal fees had been for the purpose of conserving income producing property which she already owned. As was said in Rassenfoss, supra, the lower court's determination—even of a mat-

ter of law—is to be given great weight in this area.

Bliss v. C. I. R., 57 F.2d 984 (5th Cir. 1932), allowed the deduction of attorneys' fees, incurred in the prosecution of suits against adverse claimants of oil and gas rights. The purpose of the suits was to have it judicially determined that the adverse claims asserted were invalid. The Court held:

"To treat as an addition to the cost of land the amount of an expenditure made, after ownership was acquired, to enable the owner, his agent or lessee, to possess and use the land for business purposes undisturbed by intruders or trespassers, would involve a disregard of the difference between the cost of *acquiring ownership of property* and expenses paid or incurred to protect the owner's right to undisturbed possession * * * and what it yields * * *. It seems reasonable to treat amounts expended for services rendered in ejecting *or excluding trespassers* after ownership has beeen acquired *as expenses incident* to the ownership * * * *rather than as additions to the capital* investment in the property." [Emphasis supplied.]

We make the same observation here, with respect to the Bliss case, as was made in Campbell v. Fields, (5th Cir. 1956) 229 F.2d 197. As applied to the case before us, we do not consider Bliss as being overruled by Jones Estate v. Commissioner, (5th Cir. 1942), 127 F.2d 231. See Allen v. Selig, supra.

■ The exact line of demarcation between expenses incurred in litigation in the defense of income (deductible) and those incurred in the defense of title (nondeductible) is not always clear.[10] Nevertheless, the basic princi-

---

10. As stated in Brown v. C. I. R., (5th Cir. 1954) 215 F.2d 697:

"Of course, when property is held for the production of income, any expenditure which relates to the perfection or de-

fense of the taxpayer's title to the property can, in one sense, be said to have been an expenditure for the *conservation* of the property. On the other hand, it seems equally as sound to say that any

ples underlying a determination of the nature of the expenditures involved are well settled. We do not look only to the subjective motives of the taxpayer in defending such litigation or those of the party who initiated the suit. Rather, we must look to the issues involved, the nature and objectives of the suit in which the expenditures were made, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the entire controversy out of which the disputed expenses arose.

■ We are in complete agreement with the determination by the Tax Court that the title to property and the income from it were involved in the litigation, and that an apportionment of expenses between the two must be made. We disagree that neither was predominant, and conclude that the accounting features of the litigation relating primarily to the income from property, including the effort to establish a partnership relation in the course of numerous transactions extending over a long period of years, were the predominant aspects of the litigation. Unless the existence of the partnership with Morgan, alleged to have come into existence in 1935, with the resultant right to an accounting with respect to partnership dealings, had been proven the title claim was bound to fail. This was not a lawsuit in which a naked legal title was asserted, but Stricker claimed title only by virtue of the partnership which he claimed existed, and as an incident to and a natural result of the partnership dealings.

■ We cannot approve the formula used by the Court in making the apportionment between expenditures incurred in defense of title to property and those in defense of income from it. Indeed the Tax Court held that neither was predominant and that an apportionment was necessary. Yet the apportionment between the two as made by the Tax Court, was weighted in favor of the defense of title contentions.

■ As to the apportionment which should be made, we fully agree with the conclusion by the Tax Court that "The evidence available for use in making this apportionment is not entirely satisfactory." We feel that an apportionment more in line with the breakdown of the total time spent on the accounting features of the litigation in accordance with the testimony given would be closer to the realities of the case. Cohan v. Commissioner, 39 F.2d 540 (2nd Cir. 1930); Ditmars v. C. I. R., 302 F.2d 481 (2nd Cir. 1962).

We recognize the difficulty in making the apportionment, but the Tax Court is free to receive such testimony as it needs. The records of the litigation, the files of the attorneys, the testimony of witnesses who know the facts, and opinion testimony should furnish ample evidence upon which to make such an apportionment, unless the parties can agree upon a more practical, though less scientific method, which may possibly be a more satisfactory means of disposition.

Affirmed in part and in part reversed and remanded for proceedings in accordance with this opinion.

---

such expenditure is more properly an element in the cost of acquiring or preserving the legal right to the income produced by the property, and therefore must be considered a capital expenditure.

Hence, it may be that we are confronted with what Justice Frankfurter calls 'dialetic conflicts.' "
See also Manufacturers' Hanover Trust Co. v. U. S. (Ct.Cl.1963) 312 F.2d 785.