**Philip K. SMITH et ux.**

**v.**

**UNITED STATES of America.**

**Benton G. SMITH et ux.**

**v.**

**UNITED STATES of America.**

**McIVER & SMITH FABRICATORS, INC.**

**v.**

**UNITED STATES of America.**

**No. 63–H–150.**

United States District Court
S. D. Texas,
Houston Division.

April 12, 1967.

Joe H. Reynolds, Reynolds, White, Allen & Cook, Houston, Tex., for plaintiffs.

Robert L. Waters, Asst. U. S. Atty., Houston, Tex., for defendant.

SINGLETON, District Judge.

*Memorandum*

This is an action by taxpayers for recovery of income tax alleged to have been erroneously assessed and collected for the year 1957. The cases were consolidated for trial because they grew out of a common fact situation.[1] The case came on for trial on January 3, 1967, before the Court and a jury in the United States District Court for the Southern District of Texas. On the second day of trial, counsel for all the parties agreed to dismiss the jury and submit the case to the Court.

At issue is the tax treatment to be accorded the payment by McIver & Smith Fabricators, Inc. in the amount of $23,971.98 (of a total amount of $27,500.00) to Charles G. Ritenour in settlement of his claim against certain assets held by the corporation. The Commissioner disallowed the corporation's claimed business deduction[2] in this amount and included the amount as a constructive dividend[3] in the gross incomes of Benton G. Smith and his wife and Philip K. Smith and his wife, as sole shareholders, in proportion to their stock ownership.[4]

## I.

The background out of which the controversy grows may be summarized as follows:

Prior to 1952 Philip K. Smith conducted a metal fabricating business as a sole proprietor. At about that time, he was joined in the business by his brother, Benton G. Smith. Within a short time Benton G. Smith became a partner in the business to the extent of 25%, with Philip K. Smith retaining a 75% interest.

Some time before 1952, the partnership of McIver & Smith Fabricators employed one Charles G. Ritenour as a sales-man. By 1954 the partnership's tax return (Plaintiff's Exhibit No. 6) indicates that Ritenour had become a partner in the business. Ritenour continued his association with McIver & Smith until February 15, 1955, when a dispute with the Smiths caused him to leave. At that time the partnership account reflected a balance owing to Ritenour of $4,136.02. This amount was subsequently reduced to $3,528.02 as a result of advances made by the Smiths to Ritenour.

On March 30, 1955, Ritenour brought Civil Action No. 449,944 in the District Court of Harris County against the Smith brothers individually, as co-partners in the partnership of McIver & Smith Fabricators, and against the partnership itself. The complaint alleged that Ritenour had become a partner with the Smith brothers, that they subsequently refused to account to him for his partnership interest, and prayed that a receiver be appointed to take possession of the assets, sell the same, and account to the several partners for their interest. A general denial was filed by defendants.

McIver & Smith Fabricators manufactured steel tanks and pressure vessels. As of the time Ritenour brought his suit against the partners and the partnership, McIver & Smith Fabricators owned approximately three acres of land on which was situated their manufacturing facilities. These facilities, in general, consisted of a small office building, a large shop building of heavy structural steel with reinforced concrete floor, heavy-duty overhead cranes for movement of steel tanks and vessels being fabricated, machine equipment utilized in the manufacturing process, inventories of raw materials, and the like.

On September 1, 1956, while Ritenour's suit was pending in Harris County District Court, the partnership of McIver

---

1. At a later date other issues between McIver & Smith Fabricators, Inc. and the United States will be tried separately.

2. The government has conceded the deductibility of $750.00 paid by the corporation as attorney's fees in connection with Ritenour's claim. (Supplemental Trial Brief for defendant, p. 7)

3. Section 162 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162, infra, Note 5.

4. Section 316 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 316, infra, Note 5.

& Smith Fabricators was incorporated and thereafter carried on under the name of McIver & Smith Fabricators, Inc. The business was incorporated, on the advice of accountants and counsel, in order to provide a more permanent and flexible business structure. McIver & Smith Fabricators, Inc., the new corporation, took over all of the operating assets and business of the former partnership and assumed all of its business liabilities. A portion of the land was retained by the former partnership, under the name of Rosslyn Investment Company, and leased by the partners to the corporation. Ritenour's partnership account of $3,528.02 was set up on the books of the corporation as a liability. Philip K. Smith owned 75% of the outstanding common stock of McIver & Smith Fabricators, Inc., and Benton G. Smith owned 25% of the outstanding stock. Philip K. Smith, Benton G. Smith, and Bernice Smith were the directors of the corporation. Philip K. Smith was president of the corporation and Benton G. Smith was vice president and secretary.

On April 27, 1957, Ritenour filed an amended petition in his lawsuit which again alleged his interest in the partnership and his primary demand for an accounting, a receivership, and a permanent injunction against the carrying on of the business. In the alternative, Ritenour claimed the sum of $20,000.00 as unpaid sales commissions. Defendants again denied the allegations of his petition.

On May 8, 1957, the suit came on for a trial before a jury. In response to special issues submitted to them, the jury determined that a partnership was formed between Philip K. Smith, Benton G. Smith, and Charles G. Ritenour about March 14, 1954, and that Charles G. Ritenour owned a 25% share in the partnership as of February 15, 1955. In the alternative, the jury found that Charles G. Ritenour would have been entitled to the sum of $21,510.00 as commissions on sales as of February 15, 1955, were he not a partner in McIver & Smith Fabricators.

By judgment entered on June 5, 1957, Ritenour elected the accounting-receivership-injunction remedy rather than the commissions. The judgment awarded Ritenour a one-quarter interest in the business, and, in addition, provided in part:

"It is therefore ordered, adjudged, and decreed that plaintiff, Charles G. Ritenour, have judgment against the defendants, Benton G. Smith, Philip K. Smith, and the partnership styled McIver & Smith Fabricators for an accounting; that [a receiver be appointed] and he is, hereby appointed receiver of all properties * * * owned or claimed by the said McIver & Smith Fabricators * * * as of February 15, 1955, together with all properties * * * acquired by said partnership funds or properties since said date so that said receiver shall take possession of * * * all * * * properties irrespective of the mutations or changes through which they may have passed * * * that said receiver shall, within a reasonable time after the filing of said inventory, sell all the assets * * * owned or claimed by the partnership as of February 15, 1955."

The judgment further provided that bonds should be posted; that, after liquidating the partnership's assets, the receiver should pay in this order: The debts of the receivership, the debts of the partnership, the advances to the partnership made by the partners, the amount of the partners' capital account, and the balance to be divided among the partners, one-fourth to Ritenour, one-fourth to Benton G. Smith, and one-half to Philip K. Smith. The receiver was to take over and operate the business. Finally, the judgment enjoined further conduct of the business:

"The defendants * * * are hereby permanently enjoined and restrained * * * from carrying on any business for said partnership or from selling

* * * the assets of said partnership * * * or from interfering in any way with the * * * receivership * * * That the individual defendants * * * are hereby permanently enjoined and restrained from taking or collecting any debts or monies due the partnership * * * from creating any further debts and * * * deliver unto the receiver promptly, the possession of all properties owned or claimed by said partnership so that said receiver may possess and control the same and protect the receivership's estate."

On June 6, 1957, the day after the entry of the judgment, Philip K. Smith and Benton G. Smith (directors of McIver & Smith), together with their attorney, Al L. Crystal, and their accountant, Paul N. Cheatham, met to determine what could be done about the business. The minutes of this meeting (Plaintiffs' Exhibit No. 7) reflect Mr. Crystal's advice that the judgment permanently enjoined them from carrying on the business and appointed a receiver to take over the business. An accounting would also be necessary. Mr. Crystal further advised that the case had a good chance of being reversed on appeal but that the process would take about two years. He ruled out the possibility of posting a supersedeas bond. Furthermore, in his estimation, the corporation could bid on the properties when they were sold by the receiver, but that this would be some six or seven months later.

At this time the corporation had a large backlog of unfilled orders. Failure of the corporation to complete these contracts would put the corporation out of business.

The accountant computed (on the basis of jobs in process and orders on the books) the maximum amount which the corporation could afford to pay Ritenour in settlement of his claim and still remain in business. After much discussion it was determined that $27,500.00 was the maximum amount that could be paid in order to stay in business.

On June 7, 1957, an agreement (Plaintiff's Exhibit No. 5) was entered into by and between Ritenour, Philip G. Smith, Benton G. Smith, and McIver & Smith Fabricators, the partnership. The corporation, as such, was not a party. By that agreement, Ritenour affirmed that the partnership between himself and the Smiths was completely dissolved as of February 15, 1955, and he sold and transferred his one-fourth interest in the said partnership as of that date to the Smith brothers. The agreed consideration was $27,500.00. As a consequence of the agreement reached, the receiver was never called upon to take any formal action, the injunction was avoided, and no further proceedings were had in the litigation between Ritenour and the Smith brothers.

To the extent of $23,971.98, the payment to Ritenour was directly and primarily for the benefit of the business then being conducted by McIver & Smith Fabricators, Inc. That amount was paid to promote and protect the business of that taxpayer. The sole or primary purpose or motive of all the parties in making the payment was for McIver & Smith Fabricators, Inc. to remain in business and protect its anticipated profits. The corporation thereby continued and has remained in business up until this time.

McIver & Smith Fabricators, Inc. split the $27,500.00 into two parts, offsetting $3,528.02 against the liability that had been set up on its books for Ritenour's interest and deducting the remaining $23,971.98 as an ordinary and necessary business expense on its income tax return for the year ending June 30, 1957.

Initially, the Smiths included no part of the $27,500.00 in their gross incomes. They now concede the receipt of a constructive dividend in proportion to their stock ownership to the extent of $3,528.02, but still deny that the remaining $23,971.98 was properly included in their returns for the year in question.

## II.

This case involves interplay among Sections 162, 263, and 316 of the Internal Revenue Code of 1954.[5]

The taxpayers contend that the total payment to Ritenour in the amount of $27,500.00 should be split into two parts. See Morgan's Estate v. C. I. R., 332 F.2d 144 (5th Cir. 1964). The amount of $3,528.02, the book value of Ritenour's stock, was admittedly a constructive dividend to the shareholders, 75% to Philip K. Smith and 25% to Benton G. Smith. As to the remaining $23,971.98, the taxpayers contend that the Commissioner erred in denying the corporation a deduction in that amount under Section 162 and in including that amount, as apportioned, in the Smiths' gross income. Plaintiffs have the burden of proving that the Commissioner erred. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

With regard to the corporation's claimed deduction, the Government has urged that the payment to Ritenour could not be an ordinary and necessary business expense because (a) the corporation was not obligated to make this payment, and (b) it resulted in the acquisition by the Smiths of a capital asset. The Government assumes that, if the payments were made for either of those purposes, then the corporation is not entitled to a deduction under Section 162. As to the first proposition, there may be some doubt in this Circuit as to the validity of the Government's conclusion of nondeductibility.[6] Nevertheless, for purposes of this opinion both propositions will be accepted as true.

The Government contends that the obligation to pay Ritenour rested upon the Smiths, individually or as partners, not upon the corporation. In determining who was obligated to Ritenour, the Court must look to the origin and nature of the obligation. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1939); Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 63 S. Ct. 1279, 87 L.Ed. 1607 (1942); United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963).

According to the Government the corporation was not obligated to Ritenour because:

"The subject matter of the lawsuit between those persons [Smith and Ritenour] was in no way connected with the prosecution of the business carried on by the corporate taxpayer. For that reason it is clear that the corporate taxpayer is not entitled to deduct as a business expense the sums here involved." (Defendants' Trial Brief, pp. 9 and 10)

This contention cannot be accepted. Since the corporation had assumed all liabilities of the partnership, it undoubtedly had a vital stake in the litigation between the Smiths and Ritenour. The Harris

---

5. § 162. Trade or business expenses
(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * 26 U.S.C.A. § 162
§ 263. Capital expenditures
(a) *General rule.*—No deduction shall be allowed for—(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. 26 U.S.C.A. § 263
§ 316. Dividend defined
(a) *General rule.*—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders. 26 U.S. C.A. § 316

6. In *Lutz v. Commissioner of Internal Revenue*, 282 F.2d 614 (C.A.5, 1960), the Court allowed an individual taxpayer to deduct the amount paid in settlement of debts of his three wholly owned corporations when his individual credit was at stake. *Lutz* was followed in Allen in C.I.R., 283 F.2d 785 (C.A.7, 1960); and cited with approval on another point in Surasky v. United States, 325 F.2d 191 (C.A.5, 1963). However, the fourth Circuit has refused to follow *Lutz*, Dodd v. C.I.R., 298 F.2d 570 (4th Cir. 1962). See 4A Merten's Law of Federal Income Taxation § 25.09, pp. 51–52 (1966 Revision) (hereinafter referred to as "Merten's").

County lawsuit grew out of the business dealings between the Smiths and Ritenour, while the business was being conducted as a partnership. Ritenour's interest in the business is clearly reflected on the partnership tax return for 1954 (Plaintiffs' Exhibit No. 6). When the business took on corporate form, all obligations of the partnership were assumed and carried forward on the books of the corporation. One such obligation was the amount of $3,528.02, representing Ritenour's capital account.

Thus, despite the technical effect of the general denial filed in the state court action, in reality all parties recognized the existence of the partnership prior to February 15, 1955, and the responsibility of the corporation to satisfy this obligation.

The judgment entered in the Harris County District Court suit merely reflected Ritenour's election to satisfy his claim out of the assets then held, in part, by the corporation. Under the terms of the judgment, Ritenour acquired no rights against the Smiths individually; he was only empowered to satisfy his 25% interest out of the assets of the corporation, after a receiver had settled all outstanding liabilities. If the receiver found no assets after the payment of debts, Ritenour got nothing. The Smiths were not obligated to pay anything.

On the other hand, the state court judgment seriously threatened the very existence of the corporation. The receivership and injunction constituted an encumbrance on the partnership's property then held by the corporation. Under these circumstances, settlement of Ritenour's claim could scarcely be said to afford the corporation mere incidental benefit.

Since the Court has found that the subject matter of the Harris County lawsuit was connected with the corporation's business, the cases cited by the Government are not in point. They stand for the principle, which is assumed herein, that the taxpayer cannot deduct amounts paid in settlement of someone else's debt even though the taxpayer may realize some incidental benefit. Deputy v. DuPont, supra; Interstate Transit Lines v. Commissioner of Internal Revenue, supra; and United States v. Gilmore, supra.

The case of Reade Manufacturing Co., Inc. v. United States, 301 F.2d 803 (3rd Cir. 1962) also cited by the Government, is more nearly in point. In that case the manufacturer threatened his supplier, a partnership, with a lawsuit for defective products. Shortly thereafter, the partnership was incorporated, but the corporation did not assume the partnership's debts. The manufacturer then brought suit joining the former partners as individuals and the corporation. Because it was feared that adverse publicity would materially detract from the new corporation's business, the former partners settled the lawsuit by obligating themselves personally in the form of notes payable to the manufacturer. The new corporation paid the notes and sought to deduct the amount as an ordinary and necessary business expense. In disallowing the deduction, the Court found that the corporation had gratuitously assumed the personal obligations of its shareholders.

That case is different from the present case in two material respects. First, the Court felt that the Reade corporation had been formed primarily to avoid liability on the manufacturer's lawsuit. In the second place, in order to avoid this liability, the corporation did not assume the partnership's debts. In the case at hand, McIver & Smith Fabricators, Inc. was formed for business reasons, independent of Ritenour's claim, and all liabilities of the partnership were assumed. Thus, the payment by McIver & Smith Fabricators, Inc. was not gratuitous in the sense of the Reade Corporation's payments.

The Government urges, however, that the relationship between Ritenour and the corporation was completely changed by virtue of the settlement agreement. What had formerly been an encumbrance on the property held by the corporation, it is contended, was thereby transformed into the sole personal obligation of the Smiths.

This contention patently disregards the basic realities of the business situation in which the corporation found itself. It is true that technically the agreement placed upon the Smiths the obligation to pay $27,500.00, of which $3,528.02 represented the book value of Ritenour's 25% interest in the corporation. But the true beneficiary of the payment made under this agreement was McIver & Smith Fabricators, Inc. The unfortunate oversight on the part of the draftsman in omitting the corporation's name from the agreement cannot alter its actual effect. By making the payment, the corporation was freed from what its directors, as reasonable business men, interpreted as certain financial disaster. The corporation benefited from the payment to the extent that it was able to stay in business.

Under the circumstances of this case—the direct and immediate benefit to the corporation, the absence of any personal liability on the part of the Smiths before the agreement was signed, the signature of the corporation's major shareholders, and the proximity in time between the judgment and the agreement—the payment by the corporation to Ritenour clearly was not in substance a payment to satisfy the personal obligations of the shareholders.

In the alternative, the Government contends that the corporation is not entitled to a business deduction because the expenditure resulted in the acquisition by the Smiths of a capital asset (Ritenour's stock). It therefore becomes necessary to determine whether or not the $23,971.98 was expended for the acquisition by the Smiths of a capital asset.

There is no precise verbal formula by which an expenditure can be classified as capital or noncapital. 4A Merten's § 25.20, p. 104 (1966 Revision). The Court must, again, look to the substance rather than the legal form of the transaction, Interstate Transit Lines v. Commissioner of Internal Revenue, supra, on a case-by-case basis, Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943). In characterizing the payment of this amount as a capital or noncapital expenditure, the Court has considered three salient factors: The involvement of title to corporate assets in Ritenour's Harris County lawsuit, the acquisition by the Smiths of an additional interest in the corporation as a result of the settlement payment, and the intention of the parties at the time the settlement agreement was executed and performed.

As a general proposition, it is true that expenditures resulting in the acquisition of title to property are viewed as capital in nature. However, in Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928), the Supreme Court recognized that the mere fact that title was involved in a lawsuit would not prevent deduction of attorney's fees incurred in connection with that litigation. In subsequent cases, this principle has been expanded to allow deductions for expenses other than attorney's fees, including amounts paid in settlement of lawsuits dealing with title to assets. Industrial Aggregate Co. v. United States, 284 F.2d 639 (8th Cir. 1960); Levitt & Sons v. Nunan, 142 F.2d 795 (2nd Cir. 1944); Rassenfoss v. Commissioner of Internal Revenue, 158 F.2d 764 (7th Cir. 1946). The rule derived from these cases is that involvement of title in the litigation is but one of several factors which must be weighed together in determining whether expenditures in connection with such litigation are, in substance, capital or noncapital.

Another indicia of the substance of the transaction is the subjective motive of the parties. The relative weight to be accorded intention in ascertaining the substance of the transaction seems to be somewhat in doubt, with this Circuit perhaps placing less emphasis on it, United States v. Wheeler, 311 F.2d 60 (5th Cir. 1962), than other circuits, Levitt & Sons v. Nunan, supra.

In the *Levitt* case, it was assumed that the threatened suit against the taxpayer would, if successful, establish an interest in realty. Nevertheless, the Court

through Judge Learned Hand held that purposes other than perfection of title could have motivated the settlement payment. Fear of adverse publicity resulting from the suit could have motivated the payment. It was error for the trial court not to consider such additional reasons:

> Now "[t]he mere fact that * * * it would establish such an interest, does not prove that the taxpayer has paid to defend his title; he may be completely confident that it is not in peril; yet there may be other sound reasons for ridding himself of the suit. *- * * [I]f they settled with him only because they feared the effect of publicity upon their credit, and so upon their business generally, the payment was not part of the cost of any of their property * * *." (142 F.2d p. 797) [7]

In United States v. Wheeler, supra, the trial court had sustained the taxpayer's contention that certain payments in settlement of a suit growing out of a contract to sell stock were made for the primary purpose of avoiding the appointment of a receiver, and as such were deductible. On appeal, the majority of the court held clearly erroneous the finding of the district court that the payment was "substantially or solely to prevent the appointment of a receiver." This finding was clearly erroneous because in his application for refund and in his original petition in the district court, the taxpayer had admitted settling the suit because he feared losing it.

While the Court stated that the district court had placed "undue emphasis upon the reason or subjective motive of the taxpayer," it nevertheless did not rule out consideration of taxpayer's motive in determining the substance of the transaction. The trial court's error was apparently in placing too much weight on taxpayer's own statement in view of the conflicting admissions in his previous pleadings.

In the case of McIver & Smith Fabricators, Inc., there are no statements or other evidence in conflict with the testimony of both Smiths and their accountant, as reflected in the corporate minutes, that the payment to Ritenour, in excess of his capital account, was made in order that the corporation could continue doing business.

Nor does the fact that stock was acquired as a result of the payment to Ritenour necessarily render such payment a capital expenditure. In the recent Fifth Circuit case of Five Star Manufacturing Company v. Commissioner of Internal Revenue, 355 F.2d 724 (1966), a deduction was allowed for the amount paid by a corporation to purchase the stock of one of its shareholders when such payment freed the management of the corporation from unwarranted fetters. In that case Freeman, who had an attachment on the corporation's assets and a patent which the corporation needed to license, had refused to deal with the corporation so long as Smith retained his ownership in the corporation. In order to remove Smith from the picture, and thereby obtain a release of the assets and a new licensing agreement, the corporation paid Smith $56,000.00 for his interest in the corporation. In reversing the Tax Court, the Fifth Circuit held that the amount of this payment was deductible as an ordinary and necessary business expense:

> "It can scarcely be held that the payment to Smith was for the acquisition of a capital asset, but rather one which would permit Five Star again to use assets for income production by freeing its management from unwarranted fetters." (At p. 727)

Clearly, the same may be said with reference to the $23,971.98 paid by McIver & Smith Fabricators, Inc. to Ritenour. The acquisition of Ritenour's stock was merely incidental to the primary purpose of freeing the corpora-

---

7. On remand, Levitt & Sons v. Commissioner, 5 T.C. 913 (1945), affirmed 160 F.2d 209 (2 Cir. 1947), the court found that the payment was made to perfect title to property (a capital expenditure).

tion's assets from the fetters of a receivership.

Finally, the Government suggests an analogy between the present situation and cases in which the purchase by one partner of an additional interest in the partnership was treated as a capital expenditure. Hill v. Commissioner of Internal Revenue, 38 F.2d 165 (1st Cir. 1930); Benedict v. Price, 38 F.2d 309 (E.D.N.Y.1929). The Court's attention has been directed to several cases from the Tax Court in which deductions were denied over taxpayer's contention that the payments, at least in part, were made for some purpose other than the acquisition of an additional interest in the business. This was true although the amount paid exceeded the book value of the retiring partner's interest. Kenworthy v. Commissioner, 11 T.C.M. 60 (1952), affirmed 197 F.2d 525 (3rd Cir. 1952); Davis v. Commissioner of Internal Revenue, 26 B.T.A. 218 (1932); Sperling v. Commissioner, 20 T.C. 1014 (1953); and Risko v. Commissioner, 26 T.C. 485 (1956).

A study of these cases indicates that they are not necessarily inconsistent with this Court's opinion that factors other than the acquisition of an additional interest in the business should be considered in determining whether the payment was a deductible business expense. In *Risko, Sperling,* and *Kenworthy,* the Tax Court merely found as a fact that the payments involved were made primarily for the acquisition of a capital asset. In *Kenworthy,* the Court found that:

"The $70,000.00 was more proximately related to and was paid to acquire assets * * *" (At p. 69)

In the per curiam opinion affirming the *Kenworthy* decision, the Third Circuit stated that the question of whether "the $70,000 in controversy was paid to protect and to preserve the partnership business from injury by an intemperate partner * * * or to purchase the partners' interest * * * is one of fact." The Court merely affirmed the Tax Court's finding of fact.

On this point, the *Davis* case may not be consistent with this Court's reading of the later Tax Court cases cited above. To that extent it is not to be considered as controlling authority.

On the other hand, in Rassenfoss v. Commissioner of Internal Revenue, 158 F.2d 764 (7th Cir. 1946), a deduction was allowed for an amount paid by one partner in settlement of a claim involving title to an interest in the partnership. The involvement of title in the litigation was not thought to be controlling:

"Laying aside the legal question as to whether petitioner had any title to the partnership assets, it is perfectly plain * * * that the main and primary purpose of the suit which petitioner defended was for an accounting and any question of title was merely incidental thereto." (At p. 767)

It is this Court's conclusion that neither the involvement of title in Ritenour's suit nor the acquisition of Ritenour's stock as a result of the settlement payment, when considered with the other facts in this case, should render such payment a capital expenditure.

In summary, to the extent of $23,971.-98, the payment to Ritenour was, in substance, neither in satisfaction of the Smiths' obligation nor for the acquisition of a capital asset.

The remaining question of whether the expenditure here in issue was "ordinary and necessary" may be disposed of summarily. Though this payment is of a nonrecurring nature, it is nevertheless "ordinary" within the teaching of *Kornhauser,* supra, and *Five Star,* supra. As to its necessity, failure to meet Ritenour's demands by making the payment would have effectively terminated McIver & Smith Fabricators, Inc.'s corporate existence. See 4A Merten's § 25.09.

McIver & Smith Fabricators, Inc. is, therefore, entitled to a deduction under Section 162 of the Internal Revenue Code of 1954 for the year ending June 30, 1957, in the amount of $23,971.98, plus

the stipulated $750.00, see Note 4 supra, making a total of $24,721.98.

What has been said above is likewise dispositive of the Government's contention that the apportioned amounts of the $23,971.98 should be included in the Smiths' gross income as a constructive dividend. The payment was intended to, and did in fact, primarily benefit the corporation, not the Smiths. The Commissioner therefore erroneously included these amounts in the Smiths' gross income.

Counsel for taxpayers will draft an appropriate form of judgment and, after securing approval as to form from counsel for the Government, submit it to the Court.