F. Howard **WALSH** and Mary D. **Walsh**

v.

**UNITED STATES of America.**

**Civ. A. No. CA 4–74–233–E.**

United States District Court,
N. D. Texas,
Fort Worth Division.

March 4, 1981.

---

Marvin K. Collie, Houston, Tex., Dee J. Kelly, Fort Worth, Tex., for plaintiffs.

Kenneth J. Mighell, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., William W. Guild, Atty. in Charge, Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Came on for consideration before the Court plaintiffs' claim for refund of excess income taxes paid as a result of the allegedly improper disallowance of certain deductions for accounting and attorney's fees incurred in state court litigation filed by plaintiff Mary Fleming Walsh against Harry C. Weeks, Independent Executor of the Estate of William Fleming.

I. *Statement of Facts.*

Plaintiff Mary Fleming Walsh is the only surviving child of Anna and William Fleming, both deceased. Anna Fleming died in 1941 naming William Fleming as independent executor of her estate. In her will Anna Fleming left the corpus of her estate to her daughter Mary Fleming Walsh, subject to a life estate in William Fleming. William Fleming administered the estate for 22 years until his death in 1963.

One of the assets of the Anna Fleming Estate was common stock in two closely held corporations whose principal assets consisted of oil and gas properties. Immediately after Anna Fleming's death, William Fleming partitioned this stock between the Anna Fleming estate and himself individually, as the owner of a ½ community interest. These corporations were subsequently dissolved and their assets transferred to two partnerships in which the Anna Fleming estate held an interest corresponding to its interest in the predecessor corporations.

After William Fleming's death, a dispute arose between Mary Fleming Walsh and the executor of her father's estate over the final distribution of the Anna Fleming estate. Mary Fleming Walsh filed suit in the 153rd Judicial District Court of Tarrant County, Texas, for an accounting of the administration of her mother's estate in which Mary Fleming Walsh held a vested remainder interest ("accounting claim"), and also to set aside a purported sale of the interest of the Anna Fleming estate in one of the oil and gas partnerships on the ground of self dealing and inadequate consideration ("Fleming & Kimball claim"). This litigation was pending in state court for two years during which time extensive auditing and accounting were ordered, primarily at the estate's expense. The action was eventually settled after the disqualification of Harry Weeks as executor and the appointment of a receiver to manage the assets of the William Fleming estate. Both the Estate and Mr. and Mrs. Walsh subsequently sought to deduct the expenses incurred by them in the state court action as ordinary and necessary expenses of conserving income-producing property. Four civil actions have been filed in federal district court as a result of the disallowance of these deductions, one by the Estate and three by the individual taxpayers.

Mr. and Mrs. Walsh filed their personal income tax returns for the years 1964 and 1965 claiming a deduction for attorney's fees and other expenses incurred by them

as plaintiffs in the state court litigation. The deductions were disallowed and Mr. and Mrs. Walsh brought suit on April 14, 1970, seeking a refund of excess personal income taxes paid by them as a result of the disallowance for those years. The matter was tried before the Honorable Leo Brewster in 1971, but no ruling was made at that time. Because the judge of this Court had been U. S. Attorney for the Northern District of Texas at the time this suit was filed and his name appeared on some of the pleadings, the case was assigned to the Honorable David O. Belew, Jr., following Judge Brewster's death in 1979. Judge Belew recently ruled in favor of the taxpayers on stipulated facts and the record from the 1971 trial. *Walsh v. United States*, CA 4–1433 (N.D.Tex., decided August 21, 1980) appeal docketed.

In examining the estate tax return filed by the William Fleming Estate for the taxable year beginning May 1, 1965, through April 30, 1966, the regional director of the Internal Revenue Service initially took the position that the properties and assets received by Mary Fleming Walsh in the state court settlement were an inheritance directly from her father. The National Office of the Internal Revenue Service, in a technical letter dated April 22, 1968, overruled the regional director and held that the property awarded to Mary Fleming Walsh was received by her as the remainderman under her mother's will. The Internal Revenue Service accepted the state court settlement for purposes of valuating the Estate but, nonetheless, disallowed a deduction for the accounting fees incurred by the estate as defendant in the state court action. Mary Fleming Walsh and her husband, F. Howard Walsh, acting as court-appointed independent executors of the William Fleming Estate, filed suit on October 24, 1973, seeking a refund of excess estate taxes paid as a result of the disallowance. The district court (per Mahon, J.) determined that the state court litigation was primarily for the purpose of conserving and safeguarding income-producing property rather than for defending or perfecting title and awarded a refund of $50,450.30, plus interest. *Walsh*

*Estate v. United States*, CA 4–2417 (N.D. Tex., decided September 19, 1977). The government attempted an untimely appeal of this case and was denied an extension of time by the district court. An appeal from the district court's order denying an extension was dismissed by stipulation on September 27, 1978.

Mr. and Mrs. Walsh filed the instant action in 1974 to recover excess personal income taxes assessed in 1966 as an outgrowth of the same disallowance of deduction made the basis of the two previously filed actions, plus additional refunds for certain carryforward and carryback adjustments contingent upon the allowance of a deduction for 1966. *Walsh v. United States*, CA 4–74–233. The parties have agreed that these contingent matters can be resolved by calculation once the deductibility of the attorney's fees is determined. A fourth suit brought on February 7, 1977, to recover personal income taxes assessed in various subsequent years as an incident of the disallowance of deductions for state court expenses was consolidated with the instant action on November 10, 1980. *Walsh v. United States*, CA 4–77–40.

The dispositive issue is whether the previous rulings in CA 4–2417 (the Estate case) and CA 4–1433 bind the Commissioner in these consolidated actions. The Court holds that they do.

### II. *Collateral Estoppel.*

The Court has reviewed the prior decisions in CA 4–1433 and in CA 4–2417 (the Estate case) and has determined that the central dispositive issue in both actions was the nature of the state court litigation, i. e., whether the primary purpose of the state action was to conserve income-producing property as opposed to defending title.

The doctrine of res judicata applies to bar relitigation of any cause of action that was raised or could have been raised in previous litigation between the same parties over the same transaction. Collateral estoppel (or issue estoppel) is a narrower variation of res judicata which bars relitigation of any ultimate issue of

fact actually raised in a prior suit between the parties, even though the cause of action asserted in the two suits is different. The previous ruling in CA 4–1433 would, therefore, bind both parties on any identical issue arising in subsequent litigation on a different cause of action between these individual taxpayers and the government.

### III. *Common Party Estoppel.*

Under the more modern constructions of res judicata, the holding of the Estate case would also bar relitigation of the common issues.

### A. *Mutuality.*

Traditionally, neither res judicata nor collateral estoppel could be invoked unless there was a complete identity of parties. In other words, the presence of both adverse parties from the prior action was required in the later proceeding. This element of res judicata requiring identity of parties, or their privies, is known as "mutuality," a term drawn from the statement of the rule that estoppel by judgment must be mutual. *See, Bigelow v. Old Dominion Copper Co.,* 225 U.S. 111, 127, 32 S.Ct. 641, 642, 56 L.Ed. 1009 (1912). Mutuality was born of the equitable notion that one party should not be bound by a prior judgment adverse to him unless a prior judgment in his favor would bind his adversary. This notion has been discredited in numerous contexts as a dispensable formalism that protects no significant interest justifying its burden on judicial economy. The federal courts have generally abandoned mutuality in favor of a rule that any party may be estopped from asserting a claim or a defense that has previously been resolved against him in another action, so long as that party had a full and fair opportunity to present his case in the prior adjudication. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *see also, Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) [offensive estoppel].

As with the patent cases considered in *Blonder-Tongue,* there is no compelling reason to preserve mutuality in the context of income tax litigation. If the day ever existed when business affairs were conducted without regard to tax consequences, it is long past. Modern commercial transaction of any magnitude are almost invariably structured around anticipated tax treatment, and assumptions about the nature of the transaction will frequently be the basis of the bargain. For this very reason, the internal revenue laws have become the vehicle for economic and social policy ranging far beyond the elementary needs of the public fisc. Yet the parties to a given transaction will seldom be privies in the technical sense. Abandonment of mutuality in tax proceedings will thus serve the interests of consistency and fairness in the administration of the tax laws.

### B. *Defensive or Offensive Estoppel.*

Defensive estoppel is invoked when a defendant seeks to bar a plaintiff who has litigated and lost the identical claim against a different defendant in an earlier suit, e. g., an alleged infringer raising a prior determination that a patent is invalid, *Blonder-Tongue, supra.* Offensive estoppel involves a plaintiff's use of a prior judgment obtained by a different plaintiff to establish his own affirmative claim against the same defendant. Stated another way, the plaintiff seeks to estop the defendant from relitigating a defense the defendant has once lost in a prior action, e. g., a products liability plaintiff may raise a prior determination that the product is unreasonably dangerous, *Mooney v. Fibreboard Corp.,* 485 F.Supp. 242 (E.D.Tex.1980).

The distinction between offensive and defensive estoppel blurs in tax proceedings since the taxpayer can place himself in the position of plaintiff by paying the disputed amount and suing for a refund, or in the position of a defendant by refusing to pay the disputed amount and resisting the subsequent deficiency. However, this choice is essentially procedural and does not affect the substantive issues and burdens.

Whether plaintiff or defendant, the taxpayer must affirmatively show his right to a deduction. *New Colonial Co. v. Helvering*, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). The Court is of the opinion, therefore, that a taxpayer's assertion of a prior judgment as conclusive in a later tax proceeding is an offensive use of estoppel. Upon determining that the identical issue is involved in both cases, the Court must consider not only the defendant's opportunity to litigate the merits of the issue in the prior adjudication but must also consider what opportunity the taxpayer might have had to join in the prior action as well as any anomalous consequences of binding the Government to the previous ruling. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

### C. *Opportunity to Litigate.*

█ Ample opportunity was had in the prior cases to present and develop the same arguments that are offered in substantially unchanged form in this proceeding. Similar amounts were in controversy and comprehensive briefs were submitted by both parties. The entire state court record was carefully examined on a recognized and correct legal standard to arrive at a conclusion that does not appear on its face to be "one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit." *Blonder-Tongue*, 402 U.S. at 333, 91 S.Ct. at 1445.

█ It is well established that lack of appellate review will not foreclose application of res judicata or collateral estoppel if an appeal was procedurally available and was not improperly denied to the estopped party. *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950); *Partmar Corp. v. Paramount Pictures Theater Corp.*, 347 U.S. 89, 99 n. 6, 74 S.Ct. 414, 420, 98 L.Ed. 532 (1954). Since defendant voluntarily abandoned its appeal of the district court's denial of an extension of time, defendant cannot now complain that it was improperly denied an appeal.

### D. *Unfairness to Defendant.*

The Court can discern no unfairness or anomalous consequences in barring relitigation of the primary purpose of the state court action. It was apparent to the parties from the beginning that the outcome of CA 4–1433, which had been tried before Judge Brewster in 1971, would be res judicata of the individual taxpayers' claims on entirely traditional grounds, i. e., identity of parties and issues. The two actions now pending before this Court were obviously filed only to avoid running of limitations as to those later tax years. Consolidation with an action already tried and under advisement would have been a superfluous procedure. Largely for the benefit of governmental interests, each tax year represents a different cause of action, even though a subsequent year's overpayment is an outgrowth of an earlier taxable event. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Although there is no bar to joinder or consolidation of claims involving more than one tax year, offensive common party estoppel did not definitely become available in federal question jurisdiction until 1979, see *Parklane Hosiery, supra*, after all of the suits involving the common issue had been filed and the Estate case had been decided. The Court notes approvingly that the parties have attempted throughout to conserve judicial resources by agreeing to trial on stipulated facts and the 1971 record and by consolidating the two actions now pending. Plaintiffs' failure to formally join all of their individual claims in the same action, therefore, did not amount to adoption of a strategic "wait and see" attitude. *Parklane Hosiery*, 439 U.S. at 329–332, 99 S.Ct. at 650–52.

The Court is mindful that the district court's judgment in CA 4–1433 is a final decision for ordinary res judicata purposes, even though it is on appeal. *A. F. Pylant, Inc. v. Republic Creosoting Co.*, 285 F.2d 840 (5th Cir. 1961). Although the question has not been fully developed, however, the pendency of the appeal may bear on the propriety of applying offensive common

party estoppel because of the possibility of inconsistent rulings. In light of the fact that both district courts considering the common issue have held in favor of the taxpayers, the Court concludes that any risk of inconsistency is greatly outweighed by the desirability of proceeding with the contingent claims in these two actions and putting the parties in a position to consolidate the suits on appeal if they desire to do so.

IV. *Intervening Changes in the Law.*

 The principles of res judicata can generally be applied directly to tax proceedings so long as they involve the same transaction and the same tax year. In order to avoid perpetuating obsolete tax rulings which create inequities among taxpayers, collateral estoppel has been modified in its application to tax proceedings that involve an identical transaction but different tax years. Thus, a previous determination of tax status will not be conclusive in subsequent tax years if the legal principles pertinent to the transaction have substantially changed in the intervening years. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). This rule is in no way dependent upon mutuality.

Neither the parties' briefs nor the Court's own review of recent cases, however, has revealed any change in the statutory or case law applicable to a matter of this nature since the two previous district court opinions were handed down. These adjudications may accordingly be given their full preclusive effect.

*Allocation*

Where a determination is made that both title to property and income from it are directly at issue, proration between non-deductible amounts expended in perfection of title and deductible amounts expended in management or conservation of property is required. *Morgan's Estate v. Commissioner*, 332 F.2d 144 (5th Cir. 1964). Although both previous district court opinions squarely held that the claim for accounting and allocation of income was one for conservation of income and that it predominated over the claim for rescission of the life tenant's sale of the Fleming & Kimball partnership interest, no consideration was given to the factual question of allocation between deductible and non-deductible expenses.

The Court has examined the record and makes the following findings:

1. It is uncontradicted that fifteen percent of the legal fees incurred by plaintiffs in the state court action were accrued in the preparation and pursuit of the Fleming & Kimball claim. (See CA 4–1433, Testimony of Dee J. Kelly.)

2. The Fleming & Kimball claim was one for perfection of title to income producing property.

The parties are ORDERED to resolve all contingent matters by calculation consistent with this opinion and submit a proposed form of judgment to the Court within 20 days.