PAUL C. HUFNAGLE AND G. PHYLLIS HUFNAGLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hufnagle v. Commissioner
Docket No. 15700-84.
United States Tax Court
T.C. Memo 1986-119; 1986 Tax Ct. Memo LEXIS 496; 51 T.C.M. (CCH) 694; T.C.M. (RIA) 86119; March 24, 1986. *497 Paul C. Hufnagle, pro se. Mark Pridgeon, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: with respect to petitioners' 1980 Federal income tax, respondent determined a deficiency of $5,257 and an addition to tax of $263 under section 6653(a). [1] After concessions, the issues are: (1) whether petitioners must include in gross income a management fee in the amount of $12,000; (2) whether petitioners must include in gross income as a constructive dividend the amount of certain payments made by petitioner Paul C. Hufnagle's wholly owned corporation; (3) whether petitioners are entitled to exemptions for their two oldest children as dependents under section 151; and (4) whether petitioners are liable for an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Paul C. and G. Phyllis Hufnagle, resided in Bloomington, Minnesota when they filed their petition *498 herein. Petitioner Paul C. Hufnagle (herein, "petitioner") owns all the outstanding stock of Vic Sather and Associates, Inc., a Minnesota corporation (herein, "Associates"). Associates is a holding company and is responsible for the management and operation of the Franklin State Bank of Franklin, Minnesota. On August 15, 1980, Associates issued a check, payable to the order of petitioner, in the amount of $12,000. This check was drawn on Associates' account at the American State Bank of Bloomington (Minnesota), and represented compensation for management services rendered by petitioner during the first half of 1980. A copy of the August 15, 1980 check was attached to the stipulation of facts. The front of the check was stamped "PAID - American State Bank-Sep. 22 80," while the reverse side was stamped "Credited to account of within named payee-Endorsement guaranteed." During the year in issue, Associates made payments totalling $3,544.37 to meet the educational expenses of three of petitioners' children, Paul J. Hufnagle (herein "Paul"), Mary P. Hufnagle (herein, "Mary"), and Timothy P. Hufnagle (herein, "Timothy"). [2] In September 1980, petitioner approved a resolution as *499 the corporation's sole shareholder by which Paul, Mary and Timothy were elected as directors of Associates. At the time, Paul was 22 years old and was enrolled as a full-time student at the College of St. Thomas, located in St. Paul. Minnesota, Mary was 21 years old and was enrolled as a full-time student at the College of St. Benedict near Collegeville, Minnesota, and Timothy was 19 years old and was enrolled as a full-time student at Mankato State University in Mankato, Minnesota. Both Mary and Timothy resided away from home, at or near their respective colleges, during the year in issue. [3]
*500 In addition to the education-related payments described above, Associates also made various other expenditures during the year in issue. Those which are relevant herein consist of credit card payments totaling $1,301.00, [4] a payment of $122.00 to the Sports and Health Club to cover the cost of petitioner's membership in such club for 1980, and a payment of $370.00 to the University of Minnesota in connection with the purchase of season football tickets. For the year in issue, petitioners filed an original and an amended joint Federal income tax return. Petitioners included the $12,000 management fee represented by the August 15, 1980 check from Associates in gross income on their original return, but eliminated this amount from gross income on their amended return. On their original and amended returns, petitioners claimed exemptions for each of their children, including Paul and Mary, as dependents under section *501 151. In addition to other items not here in dispute, [5] respondent determined in his notice of deficiency: (1) that petitioners were required to include in gross income a management fee from Associates in the amount of $12,000; (2) that payments by Associates for educational expenses on behalf of Paul, Mary and Timothy, for credit card charges, for petitioner's health club membership and for season football tickets, totaling $5,337, represented the payment of petitioners' personal expenses and thus constituted a constructive dividend includible in the gross income of petitioners; (3) that petitioners were not entitled to exemptions under section 151 for Paul and Mary; and (4) that petitioners were liable for an addition to tax under section 6653(a) in the amount of $263. *502 OPINION Issue 1. - Management Fee
Respondent has determined that petitioners must include in gross income for the year in issue a management fee from Associates in the amount of $12,000. Petitioners bear the burden of proving error with respect to this determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Both parties recognize the fundamental principle that gross income includes compensation for services. See section 61(a)(1). Further, they agree that during 1980, Associates owed to petitioner a management fee of $12,000 for services rendered during the first half of that year. Respondent asserts that petitioner received this fee from Associates by means of the August 15, 1980 check. Petitioners contend that petitioner never received the $12,000 check from Associates. They claim that Associates lacked sufficient funds, and simply deposited the check to its own account. [6] Upon consideration of the record, we find that the preponderance of the evidence *503 indicates that petitioner in fact received and negotiated the check in question. Accordingly, we reject petitioners' contention, and hold for respondent on this issue. The record contains a copy of the August 15, 1980 check, which was payable to the order of petitioner. The face of the check was stamped "PAID" by the American State Bank while the reverse side was stamped "Credited to the account of the within named payee-Endorsement guaranteed." This document is persuasive evidence that the check was actually received and deposited by petitioner to his own account. In an effort to refute this evidence, petitioner testified that the check in question was not received by him, but rather, was deposited by Associates to its own account. However, we found his testimony on this issue to be vague and confused and, at times, contradictory. Under such circumstances, we are obviously not required to accept petitioner's testimony as gospel and may, therefore, properly *504 accord it little weight. See, e.g., Dougherty v. Commissioner,60 T.C. 917, 932-933 (1973). Apart from such testimony, petitioners presented no evidence, such as bank statements or other documentation, in support of their position and have failed to show that petitioner did not receive and negotiate the August 15, 1980 check. In what we perceive to be an alternative argument, petitioners contend that, even if petitioner received the August 15, 1980 check, Associates lacked sufficient funds to pay such check. Accordingly, petitioner argue that they need not include the amount of the check in gross income. Petitioners' contention is again directly contradicted by the documentary evidence in the record, which reflects that the check in question was stamped "PAID" by the American State Bank. From this evidence, we must infer that Associates had sufficient funds for the check to be paid by the bank. Petitioners did not present any convincing evidence to the contrary in support of their position. [7] Thus, since petitioners have failed to establish that Associates lacked sufficient funds to pay the August 15, 1980 check, we reject their argument on this point. *505 In conclusion, we find that petitioners have failed to prove error with respect to respondent's determination. Accordingly, we hold that they are required to include in gross income for the year in issue the $12,000 management fee from Associates. Issue 2. - Constructive Dividends
Respondent has determined that certain expenditures by Associates constituted the payment by that corporation of petitioners' personal expenses, and that the amount thereof is thus includible in the gross income of petitioners as a constructive dividend. Petitioners bear the burden of proving error with respect to respondent's determination. Welch v. Helvering,supra; Rule 142(a). Under section 61(a)(7), gross income includes dividends. The term "dividend" is defined in section 316(a) as a distribution of property by a corporation to its shareholders out of its earnings and profits. There is no requirement that the dividend be formally declared or even intended by the corporation. See, e.g., Sachs v. Commissioner,277 F.2d 879 (8th Cir. 1960), affg. 32 T.C. 815 (1959). *506 It is well established that expenditures made by a corporation for the personal benefit of its shareholders may result in the receipt by the shareholders of a constructive dividend. See, e.g., Sachs v. Commissioner,supra;Greenspon v. Commissioner,229 F.2d 947 (8th Cir. 1956), affg. in part and revg. in part on another issue 23 T.C. 138 (1954); Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225 (1971); Ashby v. Commissioner,50 T.C. 409 (1968); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 663 (1962). Amounts will not escape taxation simply because they fail to pass through the hands of the shareholder. Based upon assignment of income principles, as enunciated in Helvering v. Horst,311 U.S. 112 (1940), the shareholder is taxable on the distribution of corporate earnings made at his demand or request to a third person for some purpose or obligation which he wished to fulfill even though he, himself, may have personally received no direct benefit. *507 See, e.g., Sachs v. Commissioner,supra;Byers v. Commissioner,199 F.2d 273 (8th Cir. 1952), affg. a Memorandum Opinion of this Court; Nicholls, North, Buse Co. v. Commissioner,supra.Controlling shareholders have thus been held to have received constructive dividends where corporate payments are made at their direction to or on behalf of family members. See, e.g., Byers v. Commissioner,supra;Nicholls, North, Buse Co. v. Commissioner,supra.
The classification of an expenditure as a constructive dividend is a question of fact to be determined in each case. Hardin v. United States,461 F.2d 865 (5th Cir. 1972), revg. an unreported District Court opinion; Lengsfield v. Commissioner,241 F.2d 508 (5th Cir. 1957), affg. a Memorandum Opinions of this Court. In pursuing this inquiry, courts have consistently used a two-pronged test. First, the corporation must have conferred an economic benefit without expectation of repayment. See United States v. Smith,418 F.2d 589 (5th Cir. 1969), *508 revg. and remanding 266 F. Supp. 814 (S.D. Tex. 1967). Second, the corporation-provided benefit must primarily advance the shareholder's personal interest as opposed to the business interests of the corporation. Ireland v. United Staters,621 F.2d 731 (5th Cir. 1980), affg. in part and revg. and remanding in part an unpublished District Court opinion; Sammons v. Commissioner,472 F.2d 449 (5th Cir. 1972), affg. on this point a Memorandum Opinion of this Court. With these criteria in mind, we turn to the question of whether the amounts listed by respondent in his notice of deficiency were properly determined to be constructive dividends. A. Education-related payments
During the year in issue, Associates paid a total of $3,544.37 to meet the college educational expenses of petitioners' children, Paul, Mary and Timothy. Respondent determined this amount to be taxable to petitioners as a constructive dividend. It is abundantly clear from the record that petitioner, by virtue of his control over Associates, directed the corporation's payment of his children's educational expenses. These payments indisputably conferred an *509 economic benefit upon petitioners and their family. Petitioner admitted at trial that he felt a "moral" obligation to pay the costs of his childrens' education and that, during the years prior to 1980, he personally paid such expenses. By causing Associates to make such payments, petitioner obtained a personal economic advantage, as well as the fulfillment of his parental desire to afford educational opportunities to his children. Petitioners assert that the education-related payments served legitimate corporate purposes. First, they argue that such expenditures better enabled the children to carry out their duties as directors of the corporation. Alternatively, petitioners argue that these amounts were intended to compensate the children for services rendered to Associates. These contentions are unsupported by the record. During the year in issue, Mary and Timothy were away from home attending college full-time, and Paul was also a full-time student. We are not persuaded that these children, although named as directors, played any meaningful role in the corporate affairs of Associates or that their education furthered the business interests of that corporation. Similarly, *510 we do not discern from this record any services performed by Paul, Mary or Timothy which would justify the payment of expenses on their behalf of the type involved here. After considering the record, we conclude that Associates' payment of educational expenses on behalf of Paul, Mary and Timothy was not made in furtherance of bona fide corporate purposes. Rather, such payment was simply a means for petitioner to, in effect, divert the earnings of his wholly owned corporation to his children, thereby conferring an economic benefit in satisfaction of his parental desires. Cf. Byers v. Commissioner,supra.Accordingly, we hold that the amount so expended by Associates is properly includible in petitioners' gross income as a constructive dividend. [8]
*511 B. Payments for credit card charges and health club membership.
During the year in issue, Associates made payments totalling $1,301 with respect to its credit cards, and a payment in the amount of $122 for petitioner's health club membership. Respondent determined these amounts to be includible in petitioners' gross income as constructive dividends. Petitioners introduced no evidence concerning the credit card payments in issue, and have thus failed to satisfy their burden of proof as to these expenditures. On this record, we must also sustain respondent's determination concerning Associates' payment of petitioner's health club membership. The parties have stipulated that this membership was for petitioner in his individual capacity, and it is thus clear that an economic benefit was conferred upon petitioner by reason of this payment. Petitioners have not shown that this expenditure had any relationship to the business interests of the corporation, rather than petitioner's personal interest. Accordingly, we hold that these amounts are properly includible in petitioners' gross income as constructive dividends. C. Payment for Season Football Tickets.
During the *512 year in issue, Associates paid $370 to the University of Minnesota in connection with the purchase of season football tickets. Respondent determined this amount to be includible in petitioners' gross income as a constructive dividend. After reviewing the record, we find that, of the total amount paid to the University of Minnesota, the sum of $262 represents a bona fide corporate expenditure and is therefore not properly taxable to petitioners. Petitioner admitted at trial that he had no recollection concerning the remaining $108 of this expenditure. Since petitioners have thus failed to satisfy their burden of proof as to this latter amount, we sustain respondent's determination to the extent of $108. [9]
Issue 3. - Dependency Exemptions
Respondent determined in his notice of deficiency that petitioners are not entitled to exemptions for their two oldest children, Paul and Mary, as dependents *513 under section 151. However, he concedes on brief that they may claim exemptions for Paul and Mary in the event that the education-related payments made by Associates on behalf of the children are determined to be a constructive dividend to petitioners. Since we have found such payments to be properly includible in their gross income as constructive dividends, we hold, in light of respondent's concession, that petitioners are entitled to exemptions for Paul and Mary as dependents under section 151. Issue 4. - Addition to tax under section 6653(a)
Respondent has determined that petitioners are liable for an addition to tax in the amount of $263 under section 6653(a). That provision imposes an addition to tax equal to 5 percent of the underpayment if any part thereof is due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proving respondent's determination on this issue to be incorrect. Enoch v. Commissioner,57 T.C. 781, 802 (1972). After considering the record, we conclude that they have failed to sustain their burden *514 of proof on this issue. Accordingly, we sustain the imposition of the addition to tax under section 6653(a). To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The education-related payments to or on behalf of petitioners' children were as follows: ↩
Date
On behalf of
Payee
Amount
March 4, 1980
Mary
College of St. Benedict
$1,633.97
March 25, 1980
Mary
College of St. Benedict
100.00
July 8, 1980
Paul
Growe Learning Center
300.00
November 7, 1980
Paul
Paul J. Hufnagle
1,000.00
December 17, 1980
Timothy
Mankato State University
510,40
3. According to the parties' stipulation of facts, Collegeville, Minnesota and Mankato, Minnesota are approximately 75 miles and 78 miles, respectively, from the Minneapolis/St. Paul area in which petitioners resided.↩
4. On January 26, 1980, Associates made a payment of $769.00 in connection with its American Express card account and on July 8, 1980 made a payment of $532.00 with respect to its "VISA" credit card. The record does not reflect the purpose of these payments.↩
5. In his notice of deficiency, respondent decreased petitioners' deduction for medical expenses by $546, based upon his determination of petitioners' adjusted gross income for the year in issue. The propriety of this adjustment is derivative and depends solely upon our resolution of the issues set forth herein. In his notice of deficiency, respondent also determined a liability for self-employment tax in the amount of $1,855 on the part of petitioner Paul C. Hufnagle, and in the amount of $101 on the part of petitioner G. Phyllis Hufnagle. On their original joint Federal income tax return for 1980, petitioners had shown a liability for self-employment tax in the respective amounts of $1,855 and $97. However, on their amended return, petitioners did not show any self-employment tax liability. Except insofar as their liability for self-employment tax is affected by the includibility of the $12,000 management fee referred to herein, petitioners have not introduced evidence on this point or otherwise addressed it, and are thus deemed to have conceded the issue. See Rule 34(b)(4).↩
6. Petitioners contend that the check was deposited by Associates in order to clear this item from its account. They acknowledge that the same result could have been obtained if Associates had simply cancelled the check.↩
7. Petitioners failed to present any statements from the American State Bank pertaining to Associates' account. The only relevant evidence offered by them on this point was the check register maintained by Associates. This register does not consistently reflect a current account balance. Moreover, even if we were to assume that the amount of the August 15, 1980 check had exceeded the balance in the account, it has not been shown that Associates had no other resources or available credit by which the check could have been paid.↩
8. On brief, petitioners assert that respondent had previously determined, in connection with examinations of the returns of Paul, Mary and Timothy for the year in issue, that the education-related payments represented taxable income to the children. Accordingly, petitioners argue that respondent is estopped herein from determining that these payments are taxable to petitioners as a constructive dividend. First, we note that, other than petitioner's own assertions, there is no evidence in the record of respondent's purported determination concerning the childrens' returns. Moreover, estoppel is an affirmative defense which must be pleaded and proved. See Southern Pacific Transportation Co. v. Commissioner,75 T.C. 497, 838 (1980); Lodi Iron Works, Inc. v. Commissioner,29 T.C. 696 (1958); see also Rule 39. Petitioners failed to raise any issue of estoppel in their petition. In any event, even if the issue of estoppel were properly before us, petitioners have not shown, as they must to successfully invoke that doctrine, that they acted or relied to their detriment upon respondent's purported determination concerning the childrens' returns for the years in issue. Cf. Knapp-Monarch Co. v. Commissioner,139 F.2d 863↩ (8th Cir. 1944). Accordingly, we find no merit in petitioners' estoppel argument.
9. Petitioners assert on brief that the various amounts in issue cannot constitute constructive dividends because Associates lacked sufficient earnings and profits during the year in issue. Their contention lacks factual support in the record, however, and we accordingly reject it.↩