John P. McKEAGUE and Constance F. McKeague, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90–84T.

United States Claims Court.

Dec. 15, 1986.

David A. Haist, South Bend, Ind., for plaintiffs.

Stella A. Gieseler, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This is a tax refund case which comes before this court under sections 212 and 162 of the Internal Revenue Code. Plaintiffs seek a tax refund of federal income tax in the amount of $112,680, which represents tax deficiencies assessed by the Internal Revenue Service for the tax year ending 1979. The question before the court is the deductibility of expenses (attorney and accountant fees) that John P. McKeague incurred in litigation he brought against the F.W. Dwyer Company Manufacturing Co., Inc. and its two principal officers and stockholders. The litigation resulted from a dispute regarding Mr. McKeague's employment with the company and the dollar amount to which he was entitled for the sale to them of his stock in the company. This court concludes that Mr. McKeague's attorney's and accountant's fees are part capital and part ordinary in nature.

## FACTS

This case grows out of a bitter dispute that arose between plaintiff, Mr. John McKeague (McKeague) and the company of which he was an employee, officer, director, and stockholder, F.W. Dwyer Manufacturing Co., Inc. and its successor, Dwyer Instruments, Inc. (collectively referred to as the Dwyer Company). Plaintiff Constance McKeague, McKeague's wife, is a party only because she and her husband filed a joint return.

In 1969, the Dwyer Company was recapitalized because James Dwyer, the president and majority stockholder wanted to assure that the company would continue operation after his anticipated retirement ten years later. The recapitalization plan provided for equal control of the company by McKeague and another employee, Edwin Clark, after Dwyer's retirement.

In the recapitalization, the company sold an equal number of shares to McKeague and Clark at book value, as result of which each of them owned 28 percent and Dwyer owned 30 percent of the stock. Subsequently, a portion of McKeague's and Clark's stock was placed in a voting trust of which Dwyer was named voting trustee. However, Dwyer was required under the provision of the voting trust to guarantee that McKeague and Clark would be minority directors of the company.

McKeague, Dwyer, and Clark also entered into a stock restriction agreement which required each of them to offer stock in the company to the company and to each other before disposing of it to others. This agreement provided that except at the death of a shareholder, there was no right to demand the purchase of another stockholder's shares. In addition, the bylaws of the company were amended to require unanimous approval of the directors for the issuance or public sale of any stock in order to prevent substantial diminution of the stockholdings of the three individuals.

On March 20, 1969, McKeague entered into a ten-year written employment contract with the Dwyer Company. This contract provided that McKeague was to be employed in an executive capacity, and that he was to have broad planning responsibility and policymaking authority. Dwyer became chief executive officer, McKeague became vice president of operations, and Clark took over the position of vice president of engineering and sales. McKeague and Clark were each guaranteed a minimum salary of $40,000 a year plus a bonus based on sales volume.

Between 1969 and 1974, there were frequent disagreements between McKeague and Clark. In November 1974, Dwyer appointed Clark president and McKeague administrative vice president in order to solve these problems. In 1976, Clark told McKeague that he was attempting to purchase additional shares from Dwyer and that McKeague would become vice president of industrial relations, another step downward, compared to Clark. Subsequently, the attorney for the company and Dwyer informed McKeague that Dwyer wanted to buy McKeague's stock and remove him from the company.

Following a series of meetings, Dwyer offered to buy out the remaining three years of McKeague's employment contract for $120,000 and to buy all of McKeague's stock for $700,000, which was approximately 60 percent of the book value. McKeague accepted the offer of the buy-out of his employment contract but rejected the offer for his stock as inadequate. McKeague's employment was thereafter terminated but he did continue to receive $40,000 a year from the company for the next three years.

During the following two years, Dwyer and Clark took various actions that were designed to eliminate McKeague totally from the company. Attempts to reach an agreement for the sale of McKeague's stock were unsuccessful.

In April 1978, McKeague filed suit in the United States District Court for the Northern District of Indiana against, among others, Dwyer, Clark, and the Dwyer company. After hearing the case, the district court held for McKeague, finding that Dwyer and Clark had engaged in a course of conduct designed to squeeze McKeague out of the company, had breached the agreements relating to the 1969 recapitalization and McKeague's employment contract, and had engaged in other improper conduct. The court indicated its proposed judgment.

Prior to the entry of that judgment, the parties settled the suit on substantially the same terms as those in the proposed judgment. McKeague sold his stock to Dwyer and Clark for $3,168,375, received $200,000 for breach of his employment contract, and agreed to resign as a director.

In his 1979 federal income tax return, McKeague deducted $285,418 from his total unreimbursed litigation expenses incurred that year as a miscellaneous itemized deduction. The Commissioner ruled that a portion of those expenses were attributable to the disposition of McKeague's stock and, therefore, were not deductible as an expense under the Internal Revenue Code of 1954, 26 U.S.C. §§ 162, 212 (1976), and should have been added to McKeague's basis in the stock in determining his capital gain on the sale because the amount McKeague received on the sale of his stock represented 94 percent of the settlement as a capital expenditure and only the remaining $200,000 was received as damages for breach of his employment contract as an ordinary expense. The Commissioner assessed a deficiency based upon that allocation.

This court originally determined that McKeague's lawsuit arose from the conservation and protection of his "activities as an employee, officer, director, and income investor, and not out of a dispute as to the disposition of a capital asset." However, the Court of Appeals for the Federal Circuit vacated and remanded the case for further proceedings consistent with their opinion. *See McKeague v. United States*, 788 F.2d 755 (Fed.Cir.1986).

## DISCUSSION

At issue in this case is whether the attorney fees and accountant fees McKeague incurred in litigation against the Dwyer Company and its two principal officers can be deducted as a lump sum, as an ordinary miscellaneous business expense, or whether the fees need be bifurcated because of dual origins of the claim and apportioned in part to the capital basis of the stock and part as a miscellaneous business expense.

### A. *Dual Origins*

■ In *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), the Supreme Court formulated the "origin of the claim" test and stated that "the characterization, as 'business' or 'personal,' of the litigation costs of resisting a claim depends upon whether or not the claim *arises in connection with* the taxpayer's profit seeking activities." *Id.* at 48, 83 S.Ct. at 628 (emphasis in original). When a person has a claim that has origins that are both capital and ordinary in nature, attorney and accountant expenses must be allocated between the capital and ordinary income components of the claim. *See Parker v. United States*, 215 Ct.Cl. 773, 789–91, 573 F.2d 42, 51–52 (1978), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978); *accord Burch v. United States*, 698 F.2d 575, 579–80 (2d Cir.1983) (allocation between deductible and nondeductible expenses is not unusual). Thus, attorney and accountant fees may be deducted where expended as an ordinary and necessary expense paid or incurred for the production or collection of income. However, insofar as attorney and accountant fees were expended in the acquisition or disposition of a capital asset, the fees are not deductible and should be applied to the basis of that capital asset. *Parker*, 215 Ct.Cl. at 790–91, 573 F.2d at 51–52. Consequently, there can be dual origins of a claim under the "origin of the claim" test.

■ One origin of McKeague's attorney and accountant fees arose out of Clark and Dwyer's attempt to squeeze McKeague out of the Dwyer Company. In conjunction with McKeague's battle to retain his position in the company, attorney and accountant fees are also attributable to the dispute as to whether the price offered McKeague for his stock was fair. This court concludes that McKeague's suit had a dual origin, *i.e.*, to counter the attempt by Clark and Dwyer to 1) eliminate McKeague as an employee of the company, and 2) acquire his stock at an unreasonably low price. The former aspect of the claim gives rise to an ordinary income deduction and the latter aspect to an increase in the basis of a capital asset, which is nondeductible.

### B. *Allocation of the Deductible and Nondeductible Expenses*

■ Defendant asserts that since McKeague's legal and accounting expenses were inextricably related to the equitable remedy of a forced buy-out of McKeague's stock, it is impossible to accurately allocate the time spent on the separate counts of the suit. Thus, defendant seeks a pro rata formula based on the amount of ordinary income and capital gain income received in the settlement. However, the court finds that it would be unreasonable for 94% of the legal and accounting fees to be attributed to capital gains (based on recovery of capital gains in the lawsuit) when a much greater amount of the fees and expenses are attributable to the attempted restoration of McKeague's position in the Dwyer Company. This view is in line with *Morgan v. Commissioner*, 332 F.2d 144 (5th Cir.1964), where the court agreed that the proper form of allocation was to apportion expenses according to the amount of time spent on the various features of the litigation. *Id.* at 151; *see also Eisler v. Commissioner*, 59 T.C. 634 (1973). Thus, the proper form of allocation of McKeague's attorney and accountant fees should be based on the amount of time spent on each aspect of the litigation.

## CONCLUSION

This court concludes, on the issue of liability, that McKeague's expenditures or costs incurred in the sale of his stock were

for the disposition of a capital asset and, as such, are not deductible. McKeague's expenditures or costs incurred for the production of income (other than the sale of a capital asset) are deductible. The time and expense records of the lawyers and accountants, including billings to McKeague and other related documents, will provide sufficient evidence for an allocation of McKeague's attorney and accountant fees on the basis of time.

Accordingly, within 60 days, the parties shall file a joint stipulation as to the proper amounts to be allocated to the ordinary and capital expenditures pursuant to this Opinion.