852 F.2d 1294
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
John P. McKEAGUE and Constance F. McKeague, Plaintiffs-Appellees,
v.
The UNITED STATES, Defendant-Appellant.
 No. 88-1034.
 United States Court of Appeals, Federal Circuit.
 June 28, 1988.
 
 Before RICH, NIES and MAYER, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 The United States appeals from the final judgment of the Claims Court, 12 Cl.Ct. 671 (1987), awarding taxpayers John P. McKeague and Constance F. McKeague (collectively McKeague) a refund of federal income tax for the year 1979 based on the court's determination that an additional portion of McKeague's legal and accounting fees incurred in litigation against his former employer, F.W. Dwyer Manufacturing Co., Inc., and its two principal officers and stockholders, was deductible as an ordinary expense. We affirm.
 
 OPINION
 
 2
 On remand from this court, 788 F.2d 755 (Fed.Cir.1986), the Claims Court held that McKeague's lawsuit had dual origins: "to counter the attempt by Clark and Dwyer to 1) eliminate McKeague as an employee of the company, and 2) acquire his stock at an unreasonably low price." 11 Cl.Ct. 342, 345 (1986). The court then analyzed each count of the complaint to determine whether it was ordinary or capital in nature and determined that only count XIII was capital in nature.
 
 
 3
 The government argues that the Claims Court misapplied the "origin of the claim" doctrine set forth in United States v. Gilmore, 372 U.S. 39 (1963), and other cases, because the court determined the character of each count without regard to its relationship to the dual origins. The government contends that every count had its origin in the attempt to force McKeague to sell his stock, and only counts I-IV, XIV, and XVI also had their origin in the attempt to eliminate McKeague as an "employee."
 
 
 4
 While the Claims Court's analysis is not as clear as it could be, it is apparent that the court viewed the ordinary origin of the dispute as including McKeague's position as an officer, director, and investor in the Dwyer company, not just as an "employee." Thus, for example, with respect to Count VI, the court stated that the injunction to require the company to hold proper meetings "had no relation to the disposition of stock, but involved protection of plaintiff's continuing interest in the company.... By not holding proper board meetings, defendant in the district court action, effectively shut [McKeague] out from making corporate decisions and exercising any influence over administrative policy." Elsewhere the court referred to the ordinary origin of the claim as "Clark and Dwyer's attempt to squeeze McKeague out of the Dwyer Company" and "McKeague's battle to retain his position in the company." Viewed in this context, we cannot agree that the Claims Court misapplied the "origin of the claim" doctrine simply because it did not tie each of the counts to McKeague's "employment" with the company.
 
 
 5
 We also reject the government's argument that every count, at least in part, had its origins in the attempt to force McKeague to sell his stock. Clark and Dwyer's ultimate goal may have been to squeeze out McKeague as a shareholder. But to attribute all their actions to this end, including the steps taken to eliminate McKeague as an employee, would be to ignore the dual origins--the same mistake the government says the Claims Court made.
 
 
 6
 The government further mischaracterizes the district court suit as a substitute for negotiation over the stock. The Claims Court recognized that McKeague's "primary purpose" or motivation in bringing suit is irrelevant to determining the origin of the claim. See Woodward v. Commissioner, 397 U.S. 572, 577-78 (1970) (rejecting "primary purpose" test). Thus, it is also irrelevant that McKeague brought the counts in the complaint in order to achieve the relief granted in Count XIII, i.e., the forced buy-out at fair market value.
 
 
 7
 Finally, we agree with the Claims Court that an allocation between capital and ordinary expenses based on the settlement award would be improper as it looks to the result of the litigation rather than its origin. Although not all hours could be assigned to a specific count, an allocation based on time was permissible and certainly preferable to the position advanced by the government. The Claims Court's allocation based on those hours that could be assigned to a count and on Gerding's testimony is reasonable and thus not clearly erroneous.
 
 
 8
 NIES, Circuit Judge, dissenting.
 
 
 9
 I dissent. The Claims Court misapplied the "origin of the claim" rule set forth by the Supreme Court in United States v. Gilmore, 372 U.S. 39 (1963), and its companion case, United States v. Patrick, 372 U.S. 53 (1963). It erred in focusing on the nature of each individual count of the complaint; whether a particular count is capital or ordinary is irrelevant to an "origin of the claim" analysis. Rather, a proper analysis investigates how a claim arises:
 
 
 10
 [T]he characterization ... of the litigation costs ... depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities.
 
 
 11
 Gilmore, 372 U.S. at 48 (emphasis in original). See also Keller Street Dev. Co. v. Commissioner of Internal Revenue, 688 F.2d 675, 681 (9th Cir.1982) (analysis looks to the event that prompted suit); Clark Oil & Refining Corp. v. United States, 473 F.2d 1217, 1220 (7th Cir.1973) (history of dealings between parties which occurred prior to litigation important to characterization).
 
 
 12
 Thus, the Claims Court should have decided whether a particular litigation expense was attributable to taxpayer's challenge to Clark's and Dwyer's efforts toward eliminating him as an employee or to taxpayer's challenge to their efforts toward acquiring his stock at an unreasonably low price. Because the Claims Court committed legal error in misapplying the "origin of the claim" test for tax treatment of litigation expenses, I would reverse and remand for a proper application of the test.